1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOSROW ARDALAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, CHARLES W. SCHARF, MICHAEL P. SANTOMASSIMO, KLEBER R. SANTOS, and CARLY SANCHEZ,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Khosrow Ardalan ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wells Fargo & Company ("Wells Fargo" or the "Company"),

analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Wells Fargo common stock between February 24, 2021 and June 9, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Wells Fargo is a diversified financial services company that provides banking, investment, mortgage, and consumer and commercial finance products and services in the U.S. and internationally.

3.     In 2020, Wells Fargo expanded its so-called "Diverse Search Requirement", also referred to as a diverse slate hiring policy, requiring that at least 50% of interview candidates must represent a historically underrepresented group with respect to at least one diversity dimension (including race/ethnicity, gender, LGBTQ, veterans, and people with disabilities) for most posted roles in the U.S. with total direct compensation greater than $100,000 per year.  In addition, at least one interviewer on the hiring panel must represent a historically underrepresented group with respect to at least one diversity dimension.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically,

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo had misrepresented its commitment to diversity in the Company's workplace; (ii) Wells Fargo conducted fake job interviews in order to meet its Diverse Search Requirement; (iii) the foregoing conduct subjected Wells Fargo to an increased risk of regulatory and/or governmental scrutiny and enforcement action, including criminal charges; (iv) all of the foregoing, once revealed, was likely to negatively impact Wells Fargo's reputation; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On May 19, 2022, the *New York Times* published an article entitled "At Wells Fargo, a Quest to Increase Diversity Leads to Fake Job Interviews".  Citing discussions with "seven current and former Wells Fargo employees", including Joe Bruno, a former executive in the Company's wealth management division, the article reported, in relevant part, that "[f]or many open positions, employees would interview a 'diverse' candidate", but that "that often, the so-called diverse candidate would be interviewed for a job that had already been promised to someone else."  The article further reported that Mr. Bruno was fired after "complain[ing] to his bosses" about the practice.

6.     On this news, Wells Fargo's common stock price fell $0.44 per share, or 1.04%, over two trading sessions, closing at $41.67 per share on May 20, 2022.

7.     On June 6, 2022, *Reuters* published an article entitled "Wells Fargo pauses diverse slate hiring policy after reports of fake job interviews."  The article reported that "Wells Fargo . . . is pausing a hiring policy that requires recruiters to interview a diverse pool of candidates, after the *New York Times* reported such interviews were often fake and conducted even though the job had already been promised to someone else."  The same article also reported that "[t]he bank also plans to conduct a review of its diverse slate guidelines, Chief Executive Officer Charles Scharf told staff on Monday, according to a memo seen by *Reuters*."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8.      Then, on June 9, 2022, the *New York Times* published an article entitled "Federal Prosecutors Open Criminal Inquiry of Wells Fargo's Hiring Practices."  The article reported that federal prosecutors are investigating whether Wells Fargo violated federal laws by conducting fake job interviews in order to meet the Company's Diverse Search Requirement.  The article also revealed that, since the *New York Times*' May 19, 2022 article focusing on the bank's wealth management business, "another 10 current and former employees have shared stories about how they were subject to fake interviews, or conducted them, or saw paperwork documenting the practice", and that "sham interviews occurred across multiple business lines, including its mortgage servicing, home lending and retail banking operations."

9.      That same day, Wells Fargo issued a press release entitled "Wells Fargo response to New York Times article", which confirmed that "[e]arlier this week, the [C]ompany temporarily paused the use of its diverse slate guidelines", and that, "[d]uring this pause, the [C]ompany is conducting a review so that hiring managers, senior leaders and recruiters fully understand how the guidelines should be implemented – and so we can have confidence that our guidelines live up to their promise."

10.     Following these disclosures, Wells Fargo's common stock price fell $3.68 per share, or 8.62%, over the following two trading sessions, closing at $38.99 per share on June 13, 2022.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Wells Fargo is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

15.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, acquired Wells Fargo common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant Wells Fargo is a Delaware corporation with principal executive offices located at 420 Montgomery Street, San Francisco, California 94104.  Wells Fargo's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the trading symbol "WFC".

18.     Defendant Charles W. Scharf ("Scharf") has served as Wells Fargo's Chief Executive Officer and President at all relevant times.

19.     Defendant Michael P. Santomassimo ("Santomassimo") has served as Wells Fargo's Senior Executive Vice President ("EVP") and Chief Financial Officer at all relevant times.

20.     Defendant Kleber R. Santos ("Santos") has served as Wells Fargo's Senior EVP and Head of Diverse Segments, Representation, and Inclusion at all relevant times.

21.     Defendant Carly Sanchez ("Sanchez") has served as Wells Fargo's EVP of Talent Acquisition, AA/EEO,[1] and Diversity Recruiting at all relevant times.

22.     Defendants Scharf, Santomassimo, Santos, and Sanchez are sometimes referred to herein as the "Individual Defendants."

23.     The Individual Defendants possessed the power and authority to control the contents of Wells Fargo's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Wells Fargo's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Wells Fargo, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

---

[1] "AA/EEO" refers to "Affirmative Action" (AA) and "Equal Employment Opportunity" (EEO).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Wells Fargo is a diversified financial services company that provides banking, investment, mortgage, and consumer and commercial finance products and services in the U.S. and internationally.

25.     In 2020, Wells Fargo expanded its so-called "Diverse Search Requirement", also referred to as a diverse slate hiring policy, requiring that at least 50% of interview candidates must represent a historically underrepresented group with respect to at least one diversity dimension (including race/ethnicity, gender, LGBTQ, veterans, and people with disabilities) for most posted roles in the U.S. with total direct compensation greater than $100,000 per year.  In addition, at least one interviewer on the hiring panel must represent a historically underrepresented group with respect to at least one diversity dimension.

### Materially False and Misleading Statements Issued During the Class Period

26.     The Class Period begins on February 24, 2021, the day after Wells Fargo filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 10-K").  That filing represented that, "[i]n 2020, we introduced a new set of expectations for everyone at the Company", including, among other things, "[c]hampion[ing] diversity and inclusion", which "guide how we lead ourselves, collaborate with our colleagues, and make decisions", and which "apply to everyone at Wells Fargo, at every level, and in every role[.]"

27.     The 2020 10-K also stated the following, in relevant part, regarding the Company's purported commitment to diversity and related hiring practices:

> Meeting the increasingly diverse needs of Wells Fargo's global customer base is critical to our company's long-term growth and success. Wells Fargo values and

7

promotes diversity, equity and inclusion in every aspect of our business. We are dedicated to recruitment and career development practices that support our employees and promote diversity in our workforce at all levels of our Company, including leadership positions. We have a strong record of recruiting, promoting, and rewarding women and racially/ethnically diverse employees at all levels of our Company, including a commitment to increase diverse representation in leadership roles.

28.     To demonstrate that Wells Fargo had successfully implemented its expanded Diverse Search Requirement, the 2020 10-K stated, in relevant part, that at December 31, 2020, "[o]ur global workforce was 54% female and 46% male, and our U.S. workforce was 56% female and 44% male", and that "[o]ur U.S. workforce was 55% Caucasian/white and 45% racially/ethnically diverse."

29.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Scharf and Santomassimo certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.     On March 16, 2021, Wells Fargo filed a definitive notice and proxy statement with the SEC (the "2021 Proxy"), which stated, *inter alia*, that "[i]n the U.S., we are requiring a diverse slate of candidates – and a diverse interview team – for most roles with total direct compensation of more than $100,000 per year."

31.     Additionally, the 2021 Proxy stated the following regarding Wells Fargo's diverse candidate sourcing and interview guidelines under its Diverse Search Requirement:

Consistent with our commitment to advance diversity, equity, and inclusion (DE&I) and improve workforce diversity, Wells Fargo has established Diversity Sourcing and Interview Team Guidelines that require diverse candidate slates and interview teams (referred to as our Diverse Search Requirement). Our Diverse Search Requirement was originally implemented based on our evaluation of the Company's workforce in order to determine how best to improve workforce

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

diversity. Based on our ongoing review, the Company decided to expand the scope of the Diverse Search Requirement in 2020 as part of our overall and continuing efforts to enhance workforce diversity. We define diversity for these purposes to include the following diversity dimensions: race/ethnicity, gender, LGBTQ, veterans, and people with disabilities.

The Diverse Search Requirement requires the following for most U.S. roles with total direct compensation greater than $100,000:
- At least 50% of interview candidates must be diverse with respect to at least one diversity dimension; and
- At least one interviewer on the hiring panel must represent at least one diversity dimension.

32.     With further respect to Wells Fargo's Diverse Search Requirement, the 2021 Proxy also stated, in relevant part:

Based on our evaluation of our workforce composition, the Company determined that roles with total direct compensation above $100,000 presented the greatest opportunity for improving diverse representation at the Company. For roles with total direct compensation less than $100,000, we have observed a historically higher level of diversity.

As of December 31, 2020, the scope of the Diverse Search Requirement would have covered:
- Approximately 95% of all U.S. roles with total direct compensation greater than $100,000; and
- Approximately 48% of all active U.S. employees irrespective of their total direct compensation.

These roles include senior management roles reporting to our CEO as well as job postings for covered U.S. roles, regardless of whether the candidates are internal or external . . . .

33.     With respect to how Wells Fargo enforced its Diverse Search Requirement, the 2021 Proxy assured investors, in relevant part:

Any exceptions to the Diverse Search Requirement must be approved by an Operating Committee member or one of their direct reports (or their assigned delegate). In order to obtain approval for an exception, hiring managers must show that sufficient outreach efforts were made (including the use of a variety of sourcing activities to identify diverse candidates) and that despite those efforts, they were unable to meet the Diverse Search Requirement.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34.     On April 14, 2021, Wells Fargo issued a news release reporting its first quarter 2021 results.  That news release quoted Defendant Scharf, who stated, in relevant part:

> We are keenly focused on the priorities I outlined last quarter. Our work to build the appropriate risk and control environment remains our top priority. This is a multiyear effort and there is still much to do, but I am confident we are making progress, though it is not always a straight line. We are steadfast in our commitment to do this work which should ultimately satisfy our regulatory obligations[.]

35.     On May 5, 2021, Wells Fargo filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  That filing stated, in relevant part, that "Wells Fargo's top priority remains meeting its regulatory requirements to build the right foundation for all that lies ahead", and that, "[w]hile we still have significant work to do, the Company is committed to devoting the resources necessary to operate with strong business practices and controls, maintain the highest level of integrity, and have an appropriate culture in place."

36.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Scharf and Santomassimo.

37.     On May 10, 2021, Wells Fargo issued a news release entitled "Wells Fargo Joins OneTen Coalition to Hire, Upskill and Advance Black and African American Talent in the U.S." That news release stated, in relevant part:

> OneTen is a coalition "committed to ensuring that Black and African American talent with the skills and aptitude to earn success also have the opportunity to achieve success." OneTen's mission aligns with commitments set by Wells Fargo to create a more diverse, inclusive and equitable workforce at the company. These commitments include:
>
> - Increasing recruiting staff for outreach to diverse communities
> - Partnering with senior leaders to enhance focus on recruiting, promotion and development programs for diverse talent
> - Expanding participation in national diversity events, along with a commitment to potentially interview and hire on the spot

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Requiring senior leaders to identify and engage with external diversity-focused organizations related to their line of business or function
- Increasing focus on skills-based hiring
- Factoring DE&I [Diversity, Equity, and Inclusion] metrics into senior leader compensation

* * *

Wells Fargo . . . will begin the onboarding process that includes determining the number of jobs, geographic locations, new hires and promotions the company will target as part of the commitment . . . . Wells Fargo also will participate in quarterly Community of Practice gatherings that bring the leadership of coalition companies together to inspire and share information and best practices as each works to achieve goals of this commitment.

38.    The same May 10, 2021 press release also quoted Defendant Santos, who represented:

As we continue to drive change at Wells Fargo, we are excited to join the OneTen coalition, which can play a significant role in our efforts to advance diversity, equity and inclusion at the company and in the communities we serve . . . . We are looking forward to working with OneTen to find ways to alleviate some of the barriers that hinder advancement.

39.    In addition, the May 10, 2021 press release quoted Defendant Sanchez, who stated:

Joining this coalition gives Wells Fargo another great resource and partner to reach diversity and inclusion goals in our workforce . . . . OneTen brings a unique approach to sourcing talent and we are looking forward to working with the team to expand employment opportunities and identify a broader pool of talented candidates who are a great match for Wells Fargo positions.

40.    On July 14, 2021, Wells Fargo issued a news release reporting its second quarter 2021 results.  That news release quoted Defendant Scharf, who stated, in relevant part: "Our top priority continues to be building an appropriate risk and control infrastructure for a company of our size and complexity and we continue to invest in additional resources and devote significant management attention to this work."

41.    On July 28, 2021, Wells Fargo filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2021

(the "2Q21 10-Q").  That filing contained the same statements as referenced in ¶ 35, *supra*, regarding the Company's purported commitment to compliance, strong business practices and controls, maintaining the highest level of integrity, and proper workplace culture.

42.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Scharf and Santomassimo.

43.     On October 14, 2021, Wells Fargo issued a news release reporting its third quarter 2021 results.  That news release quoted Defendant Scharf, who stated, in relevant part:

> We are a different company today and the operational and cultural changes we've made are enabling us to execute with significantly greater discipline than we have in the past. I believe we are making significant progress [in our compliance practices], and I remain confident in our ability to continue to close the remaining gaps over the next several years, though we may continue to have setbacks along the way[.]

44.     On November 1, 2021, Wells Fargo filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  That filing contained the same statements as referenced in ¶ 35, *supra*, regarding the Company's purported commitment to compliance, strong business practices and controls, maintaining the highest level of integrity, and proper workplace culture.

45.     Appended as exhibits to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Scharf and Santomassimo.

46.     On January 14, 2022, Wells Fargo issued a news release reporting its fourth quarter 2021 results.  That news release quoted Defendant Scharf, who stated, in relevant part:

> We have made sweeping changes to the leadership and culture, made significant progress on our risk, regulatory, and control work, improved the efficiency of the company while investing in our business in a more holistic and aggressive way, and have taken a different approach to our customer- and community-facing responsibilities as a large public company.

* * *

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

[W]e continue our work to put exposures related to our historical practices behind us[.]

47.     On February 22, 2022, Wells Fargo filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K").  That filing contained substantively the same statements as referenced in ¶¶ 26-27, *supra*, regarding the Company's purported commitment to diversity and related hiring practices.

48.     To demonstrate that Wells Fargo had continued to successfully implement its expanded Diverse Search Requirement, the 2021 10-K stated, in relevant part, that at December 31, 2021, "[o]ur global workforce was 53% female and 47% male, and our U.S. workforce was 56% female and 44% male", and that "[o]ur U.S. workforce was 55% Caucasian/white and 45% racially/ethnically diverse."

49.     Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by Defendants Scharf and Santomassimo.

50.     On March 14, 2022, Wells Fargo filed a definitive notice and proxy statement with the SEC, which made various representations regarding the Company's Diverse Search Requirement, including, *inter alia*, that "[o]ur DE&I commitments include a focus on hiring, promotions, and retention, and have been designed with increased accountability across those areas", including "Diversity Sourcing and Interview Team Guidelines that require diverse candidate slates and interview teams for designated posted positions"; that "[w]e seek to recruit the best and brightest talent with a keen focus on diversity for senior-level roles" and "pursue this goal by establishing trusted partnerships with candidates, hiring managers, and recruiting consultants"; and that "[w]e conduct and track targeted outreach efforts to underutilized

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

populations in order to attract well-qualified individuals to apply for open positions and identify

placement goals to help focus recruitment strategies toward underrepresented groups."

51.     On May 3, 2022, Wells Fargo filed a quarterly report on Form 10-Q with the SEC,

reporting the Company's financial and operational results for the quarter ended March 31, 2022

(the "1Q22 10-Q").  That filing contained substantively the same statements as referenced in ¶

35, *supra*, regarding the Company's purported commitment to compliance, strong business

practices and controls, maintaining the highest level of integrity, and proper workplace culture.

52.     Appended as exhibits to the 1Q22 10-Q were substantively the same SOX

certifications as referenced in ¶ 29, *supra*, signed by Defendants Scharf and Santomassimo.

53.     The statements referenced in ¶¶ 26-52 were materially false and misleading

because Defendants made false and/or misleading statements, as well as failed to disclose material

adverse facts about the Company's business, operations, and compliance policies.  Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo

had misrepresented its commitment to diversity in the Company's workplace; (ii) Wells Fargo

conducted fake job interviews in order to meet its Diverse Search Requirement; (iii) the foregoing

conduct subjected Wells Fargo to an increased risk of regulatory and/or governmental scrutiny

and enforcement action, including criminal charges; (iv) all of the foregoing, once revealed, was

likely to negatively impact Wells Fargo's reputation; and (v) as a result, the Company's public

statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

54.     On May 19, 2022, the *New York Times* published an article entitled "At Wells

Fargo, a Quest to Increase Diversity Leads to Fake Job Interviews".  Citing discussions with

"seven current and former Wells Fargo employees", including Joe Bruno, a former executive in

the Company's wealth management division, the article reported, in relevant part, that "[f]or many open positions, employees would interview a 'diverse' candidate", but that "that often, the so-called diverse candidate would be interviewed for a job that had already been promised to someone else." The article further reported that Mr. Bruno was fired after "complain[ing] to his bosses" about the practice.

55.     On this news, Wells Fargo's common stock price fell $0.44 per share, or 1.04%, over two trading sessions, closing at $41.67 per share on May 20, 2022. Despite this decline in the Company's share price, Wells Fargo common stock continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misrepresentations and omissions regarding the Company's use of its diverse slate hiring policy.

56.     For example, as early as June 3, 2022,[2] Wells Fargo published a 2022 Diversity, Equity, and Inclusion Report, which stated the following, in relevant part, regarding the Company's Diverse Search Requirement:

> Diverse candidate slates and interview teams
>
> For most posted roles in the U.S. with total direct compensation greater than $100,000 per year, Wells Fargo requires that at least 50% of the interview candidates must represent a historically underrepresented group with respect to at least one diversity dimension and at least one interviewer on the hiring panel must also represent a historically underrepresented group with respect to at least one diversity dimension.
>
> Outside the U.S., Wells Fargo has country-specific strategies in place to ensure that the company is considering a diverse pool of candidates.

57.     The statements referenced in ¶ 56 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse

---

[2] *See* Archive of *2022 Diversity, Equity, and Inclusion Report* by Wells Fargo, Wayback Machine, https://web.archive.org/web/20220603174229/https://www08.wellsfargomedia.com/assets/pdf/about/corporate/diversity-equity-inclusion-report.pdf (last visited June 28, 2022).

facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo had misrepresented its commitment to diversity in the Company's workplace; (ii) Wells Fargo conducted fake job interviews in order to meet its Diverse Search Requirement; (iii) the foregoing conduct subjected Wells Fargo to an increased risk of regulatory and/or governmental scrutiny and enforcement action, including criminal charges; (iv) all of the foregoing, once revealed, was likely to negatively impact Wells Fargo's reputation; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

58.     On June 6, 2022, *Reuters* published an article entitled "Wells Fargo pauses diverse slate hiring policy after reports of fake job interviews."  The article reported that "Wells Fargo . . . is pausing a hiring policy that requires recruiters to interview a diverse pool of candidates, after the New York Times reported such interviews were often fake and conducted even though the job had already been promised to someone else."  The same article also reported that "[t]he bank also plans to conduct a review of its diverse slate guidelines, [Defendant] Scharf told staff on Monday, according to a memo seen by *Reuters*."

59.     Then, on June 9, 2022, the *New York Times* published an article entitled "Federal Prosecutors Open Criminal Inquiry of Wells Fargo's Hiring Practices."  That article stated, in relevant part:

> Federal prosecutors in New York have opened a criminal investigation into whether Wells Fargo violated federal laws by conducting sham interviews of minority and female job candidates, according to two people with knowledge of the inquiry.

> The investigation is being conducted by members of a newly created civil rights unit inside the criminal division of the Manhattan U.S. attorney's office, the people said.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

* * *

At Wells Fargo, one of the nation's largest banks, with nearly 250,000 employees, sham interviews occurred across multiple business lines, including its mortgage servicing, home lending and retail banking operations. The Times report last month focused on the bank's wealth management business.

Since then, another 10 current and former employees have shared stories about how they were subject to fake interviews, or conducted them, or saw paperwork documenting the practice. The people spoke on the condition of anonymity because they feared retaliation from Wells Fargo or their current employers.

* * *

In some instances, there were written records of the practice of conducting fake interviews.

60.    That same day, during post-market hours, Wells Fargo issued a press release entitled "Wells Fargo response to New York Times article", which confirmed that the Company had paused and was indeed evaluating its diverse slate hiring guidelines, stating, in relevant part:

"No one should be put through an interview without a real chance of receiving an offer, period. The diverse slate guidelines we put in place are meant to increase diverse representation across the company . . . .

At the same time, it's important that implementation of our guidelines is consistent. Earlier this week, the company temporarily paused the use of its diverse slate guidelines. During this pause, the company is conducting a review so that hiring managers, senior leaders and recruiters fully understand how the guidelines should be implemented – and so we can have confidence that our guidelines live up to their promise."

61.    Following these disclosures, Wells Fargo's common stock price fell $3.68 per share, or 8.62%, over the following two trading sessions, closing at $38.99 per share on June 13, 2022.

62.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

2

63.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

3

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

4

otherwise acquired Wells Fargo common stock during the Class Period (the "Class"); and were

5

damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are

6

Defendants herein, the officers and directors of the Company, at all relevant times, members of

7

their immediate families and their legal representatives, heirs, successors or assigns and any entity

8

in which Defendants have or had a controlling interest.

9

64.     The members of the Class are so numerous that joinder of all members is

10

impracticable.  Throughout the Class Period, Wells Fargo common stock was actively traded on

11

the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and

12

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds

13

or thousands of members in the proposed Class.  Record owners and other members of the Class

14

may be identified from records maintained by Wells Fargo or its transfer agent and may be

15

notified of the pendency of this action by mail, using the form of notice similar to that customarily

16

used in securities class actions.

17

65.     Plaintiff's claims are typical of the claims of the members of the Class as all

18

members of the Class are similarly affected by Defendants' wrongful conduct in violation of

19

federal law that is complained of herein.

20

66.     Plaintiff will fairly and adequately protect the interests of the members of the Class

21

and has retained counsel competent and experienced in class and securities litigation.  Plaintiff

22

has no interests antagonistic to or in conflict with those of the Class.

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

67.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Wells Fargo;

- whether the Individual Defendants caused Wells Fargo to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Wells Fargo common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

69.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

19

- Wells Fargo common stock is traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

- Plaintiff and members of the Class purchased, acquired and/or sold Wells Fargo common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

70. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

71. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

72. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

74. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Wells Fargo common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Wells Fargo common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

75.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Wells Fargo common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Wells Fargo's finances and business prospects.

76.     By virtue of their positions at Wells Fargo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

77.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Wells Fargo, the Individual Defendants had knowledge of the details of Wells Fargo's internal affairs.

78.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Wells Fargo.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Wells Fargo's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Wells Fargo common stock was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Wells Fargo's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Wells Fargo common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

79.     During the Class Period, Wells Fargo common stock was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Wells Fargo common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Wells Fargo common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Wells Fargo common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

80.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     During the Class Period, the Individual Defendants participated in the operation and management of Wells Fargo, and conducted and participated, directly and indirectly, in the conduct of Wells Fargo's business affairs.  Because of their senior positions, they knew the adverse non-public information about Wells Fargo's misstatement of income and expenses and false financial statements.

84.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wells Fargo's financial condition and results of operations, and to correct promptly any public statements issued by Wells Fargo which had become materially false or misleading.

85.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wells Fargo disseminated in the marketplace during the Class Period concerning Wells Fargo's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Wells Fargo to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Wells Fargo within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wells Fargo common stock.

86.     Each of the Individual Defendants, therefore, acted as a controlling person of Wells Fargo.  By reason of their senior management positions and/or being directors of Wells Fargo, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Wells Fargo to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Wells Fargo

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

87.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Wells Fargo.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 28, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS