**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
STACEY M. KAPLAN (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:  (415) 400-3001

*Counsel for Class Representative SEB Investment Management AB and Class Counsel*

[*Additional counsel listed on signature page.*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, and WEST PALM BEACH FIREFIGHTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, CHARLES W. SCHARF, KLEBER R. SANTOS, and CARLY SANCHEZ,<br><br>Defendants. | Case No. 3:22-cv-03811-TLT<br><br>**JOINT RESPONSE TO THE COURT'S QUESTIONS FOR THE PARTIES REGARDING PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Date: October 28, 2025<br>Time: 2:00 p.m.<br>Location: Ctrm 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

Class Representatives SEB Investment Management AB and West Palm Beach Firefighters' Pension Fund (collectively, "Plaintiffs"), together with Defendants Wells Fargo & Company, Charles W. Scharf, Kleber R. Santos, and Carly Sanchez (collectively, "Defendants," and together with Plaintiffs, the "Parties"), respectfully submit this Joint Response to the Court's Questions for the Parties Regarding Preliminary Approval of Settlement Agreement (Dkt. No. 261) (the "Preliminary Approval Questions").

## I. RESPONSES TO THE COURT'S QUESTIONS REGARDING THE TERMS OF THE SETTLEMENT AGREEMENT

On October 22, 2025, the Court posed the following questions to Plaintiffs regarding the terms of the Settlement Agreement:

1. Plaintiffs' counsel will seek up to 25% of the settlement fund, subject to Court approval. ECF 254 at 16.

    a. Discuss whether Plaintiffs' counsel propose an upper limit on the fees they will request. Please designate a monetary amount. What is the lodestar?

    b. Discuss whether Plaintiffs' counsel have a current estimate of Plaintiffs' counsel's attorneys' fees, litigation costs, administrative fees.

    c. Discuss whether this settlement differs from other preliminary approval settlements. If so, how.

Plaintiffs respectfully provide the following responses:

   d. Plaintiffs' Counsel propose an upper limit on the fees of 25% of the Settlement Fund, which equates to a monetary amount of $21.25 million. *See* Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Memorandum of Points and Authorities in Support Thereof (Dkt. No. 254) ("Preliminary Approval Motion"), at 16. Plaintiffs' Counsel's lodestar, which includes lodestar for Kessler Topaz Meltzer & Check, LLP and Saxena White P.A., is approximately $20 million. *Id.* Plaintiffs' Counsel anticipates that the lodestar multiplier on the requested fee amount will be less than 1.2. *Id.*

   e. Plaintiffs' Counsel's current estimate of requested attorneys' fees is $21.25 million (25% of the Settlement Fund). *Id.* at 16. Plaintiffs' Counsel's current estimate of

litigation costs is $3.5 million, a large portion of which (approximately $2 million) was incurred in connection with the retention of Plaintiffs' experts and consultants. *Id.* at 17. In addition, Plaintiffs have incurred costs and expenses, including lost wages, relating to their representation of the Class, which they may seek reimbursement for pursuant to the Private Securities Litigation Reform Act in an amount not to exceed $60,000 in the aggregate. *Id.* (citing 15 U.S.C. §78u-4(a)(4)). A.B. Data estimates that administrative costs will range from approximately $950,000 to $1,200,000. *Id.* at 24 (citing Declaration of Eric A. Nordskog in Support of Plaintiffs' Unopposed Motion for Preliminary Approval (Dkt. No. 254-3) ("Nordskog Declaration"), ¶31). In total, Plaintiffs' Counsel's total estimate for attorneys' fees, litigation costs, and administrative fees is $25.95 million.

    f.    The 25% attorneys' fee that Plaintiffs' Counsel anticipates requesting is the benchmark percentage for attorneys' fees in the Ninth Circuit and, as such, is directly in line with other preliminary approval settlements. Preliminary Approval Motion at 16. Plaintiffs' Counsel's anticipated lodestar multiplier of 1.2 or less is on the lower end of multipliers commonly approved in class actions. *Id.* at 16-17. Likewise, Plaintiffs' Counsel's litigation expenses—which include costs for experts and consultants, travel, online legal and factual research, data hosting, the Class Notice campaign, and mediation with Judge Phillips—are of the same type regularly approved in securities fraud class actions. *See, e.g., Destefano v. Zynga, Inc.*, 2016 WL 537946, at * 22 (N.D. Cal. Feb. 11, 2016) ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."). Moreover, Plaintiffs' request for reimbursement is expressly authorized by statute, and in line with awards approved in other securities fraud class actions. Preliminary Approval Motion at 17. In addition, the administrative fees are in line with fee estimates

approved in other securities fraud class actions. *See, e.g.*, *Farrar v. Workhorse Group, Inc., et al.,* 2023 WL 5505981, at *9 (C.D. Cal. July 24, 2023) (estimated administration costs of $925,000, representing 2.6% of settlement); *In re Oracle Corp. Sec. Litig.*, No. 18-cv-04844-BLF, ECF No. 128-3, ¶ 12 (N.D. Cal. July 11, 2022) (estimated administration costs of $1.6 million, representing 9% of settlement). The Settlement itself also does not materially differ from many settlements that have been preliminarily approved in securities fraud class actions. To the contrary, the Settlement, which represents 4.25% to 8.5% of the Class's maximum recoverable damages (as estimated by Plaintiffs' damages expert) and was the product of a mediator's recommendation, is well within the range of recoveries achieved and approved by courts in other securities class actions. *Id.* at 15, n.15.[1] Moreover, the provisions of the Settlement Agreement are standard, and courts have regularly approved nearly identical language in other securities class actions. *See, e.g.*, Section III.3.*, infra* (release language is consistent with language approved by other courts in securities fraud class actions); Preliminary Approval Motion at 8 (same), 8-9 (none of the Ninth Circuit's indicia of collusion are present here), 18 & n.18 (supplemental agreement is standard in securities class actions), 22-23 (proposed notice plan is the same method used for the Class notice campaign, and is the same as notice plans approved in many other securities class actions).[2] In addition, the proposed Plan of Allocation is substantially similar to plans that have

---

[1] *See, e.g., In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving 2.7% of damages because percentage was "not [] inconsistent with the average recovery in securities class action[s]"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of maximum damages); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages"); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement recovering approximately 3% of damages and noting "a 3% recovery is within the range of the percentages of recovery approved in other securities class action settlements").

[2] *See, e.g., Plumbers & Pipefitters Local Union #295 Pension Fund, et al. v. CareDx, Inc., et al.*, No. 22-cv-03023-TLT, ECF No. 185, pp. 8-9 (N.D. Cal. July 23, 2025) (approving notice plan consisting of mailed postcard notice, published summary notice, and website with notice and claim form available for download); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5184290, at *2 (N.D. Cal. Nov. 5, 2021) (same)

been regularly approved in securities class action settlements. *See, e.g., Plumbers & Pipefitters Local Union #295 Pension Fund, et al. v. CareDx, Inc., et al.*, No. 22-cv-03023-TLT, ECF No. 191-5 pp. 22-24 (N.D. Cal. Sep. 30, 2025) (plan requires purchases/acquisitions during class period to be held over corrective disclosure for loss; based on alleged artificial inflation); *In re HP Secs. Litig.*, Case No. 3:20-cv-01260-SI, ECF No. 132-4, Ex. B (N.D. Cal. June 23, 2023) (same).

In its Preliminary Approval Questions, the Court also posed the following question to both Parties regarding the terms of the Settlement Agreement:

>   2.  Please provide the estimated Net Settlement Amount (Settlement Amount minus fees, costs, and awards) that will be available to participating Class Members.

The Parties respectfully respond as follows: The Net Settlement Amount available to participating Class Members after deducting estimated attorneys' fees, costs, awards, and administration fees is $59.05 million, or approximately 69.5 percent of the total $85 million Settlement.

## II.   RESPONSES TO THE COURT'S QUESTIONS REGARDING PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

In its Preliminary Approval Questions, the Court first posed the following question to the Parties regarding preliminary approval of the Settlement Agreement:

>   3.  The Parties indicate that under the Settlement Agreement, released claims include claims that both (1) "arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action," and (2) "arise out of, are based upon, or relate in any way the purchase or other acquisition of Wells Fargo common stock between February 24, 2021 and June 9, 2022, inclusive." ECF 254 at 8; 254-1 ¶1(b).
>       a.  As the Parties are aware, disclosure is required with respect to the differences between released claims and claims in the complaint. *See* N.D. Cal. Guid. ¶1(b).
>       b.  Please discuss the differences between the Released Claims under the Settlement Agreement and the claims in the complaint in this action.

The Parties respectfully respond as follows: The Released Claims include both the exact claims pled in the complaint, and also related claims that "could have been alleged" based on the identical factual predicate. This is entirely consistent with Ninth Circuit law. *See In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *2 (C.D. Cal. Apr. 23, 2024) ("[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims based on the identical factual predicate as that underlying the claims in the settled class action.") (citations omitted) (Brackets in original). The Settlement Agreement contains two separate limitations on Released Claims. *First*, Released Claims are limited to only those claims that "arise out of, are based upon, or relate in any way to the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in the Action, or which could have been alleged in the Action." Settlement Agreement, ¶1(mm). Second, Released Claims are further limited to only those claims that "arise out of, are based upon, or relate in any way to the purchase or acquisition of Wells Fargo common stock between February 24, 2021 and June 9, 2022, inclusive." *Id.* By including **both** a subject matter limiter, and a limitation that claims must relate to the purchase or acquisition of Wells Fargo common stock (the security at issue in this Action) during the Class Period, the Settlement Agreement ensures that the Released Claims do not exceed that identical factual predicate. Courts have repeatedly approved virtually identical language in other securities fraud class action settlements, finding that such releases limit released claims to only those based on an identical factual predicate. Dkt. No. 254. Preliminary Approval Motion at 8 (collecting cases). Indeed, this Court has approved securities fraud class action settlements with substantially similar release language. *See In re Alphabet, Inc. Sec. Litig.*, No. 3:18-cv-06245-TLT, Dkt. Nos. 222-2 (stipulation of settlement) at ¶1.25 & 228 (preliminary approval order) (Thompson, J.) (preliminarily approving settlement that released claims that were "based on, arising out of, or in connection with both: (i) the purchase or acquisition of Alphabet Class A and/or Class C common stock during the period from April 23, 2018 through April 30, 2019, inclusive, and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged by Lead Plaintiff and other members of the Settlement Class in the Action."); *Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 22-cv-03023-TLT, Dkt. Nos. 177-2 (stipulation of settlement) at ¶1.24 & 185 (preliminary approval order) ¶1.24 (preliminarily approving settlement that

released "all claims (including, but not limited to, Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, . . . which arise out of, are based on, or relate in any way to, directly or indirectly: (i) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action; and (ii) the purchase or acquisition of CareDx common stock by any member of the Class during the Class Period").

*     *     *

In addition, with respect to preliminary approval of the Settlement Agreement, the Court posed the following questions to the Parties:

    4.    As the Parties are aware, *Low v. Trump Univ., LLC*, 881 F.3d 1111 (9th Cir. 2018), stands for the proposition that Rule 23(e)(4) does not require a second opt-out period in connection with the Settlement process.

        a.    Discuss the factors that the Court should consider when determining whether a second opt-out period is necessary.

            i.    In answering this question, please consider how a second opt-out period impacts the Court's fair, adequate, and free of collusion assessment.

            ii.    In answering this question, provide citations to binding and persuasive caselaw.

The Parties respectfully respond as follows:

As discussed in the Preliminary Approval Motion, the Ninth Circuit has made clear that there is no requirement that members of a Rule 23(b)(3) class be given a second opportunity to opt out at the settlement stage when they have already had a fair opportunity to do so in connection with class notice. Preliminary Approval Motion at 24 (citing *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1122 n.6 (9th Cir. 2018) (noting that Rule 23(e)(4) does not "impose a per se rule mandating a settlement-stage opt-out opportunity in any case where members of a previously-certified class later learn of a settlement's actual value")); *see also Officers for Justice v. Civ. Serv. Com.*, 688 F.2d 615, 634-35 (9th Cir. 1982) ("[W]e have found no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not.").

The Ninth Circuit has also made clear that providing a second opportunity to opt out at the settlement stage is "unusual." *Low*, 881 F.3d at 1121 (quoting *Officers for Justice*, 688 F.2d at 634-35). While there do not appear to be set factors that courts in this Circuit analyze in determining whether a second opt-out period is necessary, the following are factors that courts have cited in reaching their conclusions on this question:

**Whether the first notice disclosed that there may not be a second opportunity to opt out.** In analyzing whether a second opt-out opportunity should be provided, several courts have examined whether the initial notice informed class members that they may not have a second opportunity to opt out. *See, e.g.*, *Baker v. Seaworld Entm't, Inc.*, 2020 WL 818893, at *5 (S.D. Cal. Feb. 18. 2020) ("In light of the extensive notice program undertaken in connection with class certification and the ample opportunity provided to Class Members to request exclusion from the Class at that time, *as well as the notification they received that there may not be a second opportunity to opt out*, the Court is exercising its discretion not to allow a second opportunity for Class Members to exclude themselves from the Class in connection with the Settlement proceedings.") (emphasis added); *In re Zillow Grp., Inc. Sec. Litig.*, 2023 WL 2766264, at *4 (W.D. Wash. Apr. 3, 2023) (holding there was no need for a second opt out, citing, among other things, "the notification they received that there may not be a second opportunity to opt out"). Here, the postcard notice disseminated to the Class in the Class Notice campaign made clear to Class Members that **"[i]f you DO NOT want to be a Class member** and be legally bound by anything that happens in the Action, **you must exclude yourself.**" Braun Declaration, Ex. A (Dkt. No. 253-1). Moreover, the Class Notice explicitly stated that "[p]ursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there is a settlement." Braun Declaration, Ex. B (Dkt. No. 253-2). *See In re Qualcomm Inc. Sec. Litig.*, 2024 WL 3209339, at *5 & n.2 (S.D. Cal. Jun. 27, 2024) (finding no second opt-out opportunity was necessary, citing the fact that the postcard notice "expressly informed potential Class Members that if they did not request exclusion by January 29, 2024, they would be bound by all orders, whether favorable or unfavorable, that the Court enters in this case" and "the long-form Class Notice expressly stated that "it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action").

**Changes in the information available to Class Members:** The Advisory Committee's 2003 Note on Federal Rule of Civil Procedure 23(e)(3) indicates that one factor that a court may consider in determining whether a settlement agreement is unfair where it does not permit a second opt out period is "changes in the information available to class members since expiration of the first opportunity to request exclusion."[3] In analyzing this factor, courts have looked at the amount of time that has passed between the first and second notices. *See, e.g.*, *Shields v. Fed'n Internationale de Natation*, 2025 WL 2959896, at * 7 (N.D. Cal. Oct. 17, 2025) (citing Advisory Committee's 2003 Note, and holding that "The fact the notice plan does not call for a second opt-out period does not weigh against approval" because "Notice was provided to all the Damages Class Members *less than six months ago*….") (emphasis added). Here, Class Notice was sent to Class Members less than three months ago and the deadline for requesting exclusion was September 30, 2025.[4] Moreover, the only new developments that have occurred since Class Notice was mailed—namely, vigorous litigation that culminated in a substantial recovery—provide a clear benefit to the Class. While the actual terms of the Settlement constitute new information that was not available to Class Members at the time they made their decision to opt out, courts have held that this is not a sufficient reason to require a second opportunity to opt out. *See, e.g.*, *Anderson v. Boyne USA, Inc.*, 2025 WL 1755223, at * 6 (D. Mont. June 25, 2025) (rejecting objectors' argument that a second chance to opt out should have been afforded at the settlement stage because "class members here could not have known what the terms of the settlement would be"); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1310 (S.D. Cal. Mar. 31, 2017) (rejecting objectors' argument that settlement was unfair because "there was no settlement on the horizon at the time the initial opt-out period expired," explaining "[t]his line of reasoning runs contrary to the Ninth Circuit's reasoning that '[r]equiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached'") (quoting *Officers for Justice*, 688 F.2d at 635) (second alteration in original), *aff'd*, 881 F.3d at 1111 (9th Cir. 2018).

**The sophistication of class members:** At least one court has examined the sophistication of class

---

[3] While this factor is not directly on point, since the Settlement Agreement here does allow for a second opt out should the Court in its discretion order one, the Parties nevertheless discuss it here.

[4] Prior to this deadline, on September 25, 2025, the Parties filed a notice of settlement disclosing that they reached an agreement to settle this Action. Dkt. No. 250.

members in coming to its decision on whether to require a second opportunity to opt out. *In re HIV Antitrust Litig.*, 2023 WL 11897610, at *2 (N.D. Cal. Sep. 25, 2023) (holding that "a second opportunity to opt out is not necessary in this case" reasoning, among other things, that "[t]he class members are sophisticated entities and thus understood the importance of the decision of whether or not to opt out at the time they were notified of class certification"); *see also* Fed. R. Civ. P. 23(e)(3) advisory committee's note to 2003 amendment (one factor a court may consider in deciding whether a settlement agreement is unfair where it does not permit a second opt out period is "the nature of the individual class members' claims"). Here, a large portion of the Class is likely to consist of sophisticated institutional investors. *See* Dkt. No. 182-2, Expert Report of Joseph R. Mason, PhD. at ¶ 58 ("Institutional investors owned at least 74.1percent of Wells Fargo publicly-available common stock and on average 77.4 percent during the Class Period.").

**Whether there was ample opportunity to opt out previously.** In reaching a decision on whether to require a second opt-out opportunity, courts also examine whether the initial notice provided ample opportunity for class members to opt out. *See, e.g.*, *Qualcomm*, 2024 WL 3209339, at *5 (no second opt-out in light of, among other things, the "extensive notice program and the ample opportunity provided to Class Members to request exclusion from the Class in connection with the Class Notice"); *Musgrove v. Jackson Nurse Professionals*, LLC, 2022 WL 2092656, at *7 n.8 (C.D. Cal. Jan. 11, 2022) (holding that "an additional opportunity to request exclusion is not warranted here," "since class members were previously provided an opportunity to do so"); *Zillow*, 2023 WL 2766264, at *4 (no second opt-out necessary "[i]n light of the extensive notice program undertaken in connection with class certification and the ample opportunity provided to Class Members to request exclusion from the Class at that time"). Here, there has already been an extensive notice campaign to advise Class Members of the pendency of the Action as a class action as well as their right to opt out of the Class. *See* Dkt. No. 253. During the Class Notice campaign, A.B. Data mailed over 778,000 notices to potential Class Members and nominees. *See id.* ¶ 8, Exs. A & B. A related summary notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See id.* ¶ 9, Exs. C & D. Moreover, 49 potential Class Members requested exclusion from the Class. *See Shields*, 2025 WL 2959896, at *7 (no need for a second opt out opportunity where class members were provided notice and "give[n] the opportunity to opt-out of the case—and two class members did opt-out").

Finally, the Court asked the Parties to "consider how a second opt-out period impacts the Court's fair, adequate, and free of collusion assessment." Here, the Parties do not believe that the Court's assessment of whether a second opt-out period is necessary has any impact on whether the Settlement is fair, adequate, and free of collusion. The Parties' Settlement Agreement makes explicitly clear that the Settlement "is not contingent on the Court's decision regarding whether or not a second opportunity to request exclusion shall be permitted." Dkt. No. 254-1, Settlement Agreement, ¶ 3. Thus, should the Court in its discretion decide to require a second opt-out opportunity, the Settlement will not be impacted in any way.[5]

## III. RESPONSES TO THE COURT'S QUESTIONS REGARDING PLAN OF NOTICE, ALLOCATION, AND ADMINISTRATION

In its Preliminary Approval Questions, the Court posed the following question to the Parties regarding plan of notice, allocation, and administration:

> 1. The Court must consider whether notice of the proposed settlement is adequate. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) ("[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice; the notice must indicate that a dissident can object to the settlement and to the definition of the class . . .").
>    a. The Settlement Agreement provides that the Postcard Notice will be "mail[ed] and/or email[ed]" to Class Members. ECF 254-1 ¶ 19. Please discuss how the Claims Administrator will determine whether to email, mail, or use both methods to distribute Postcard Notice to Class Members.

The Parties respectfully respond as follows: The determination of whether to email, mail, or use both will be based upon the information that the Claims Administrator has for each potential Class Member. Specifically, while Plaintiffs' Counsel requested both mailing addresses and email addresses for potential

---

[5] Even in cases where the settlement agreement prohibits a second opportunity to opt out, courts have still regularly approved the settlements as fair, reasonable, adequate, and free of collusion. *See, e.g.*, *Yanez v. Knight Transp. Inc.*, 2024 WL 4524164, at *3 (D. Ariz. Oct. 16, 2024) (approving settlement agreement as fair, adequate, and free from collusion even though it expressly prohibited a second opt out period); *Low*, 881 F.3d at 1122 (finding that the district court properly approved a settlement "despite its prohibition on additional opt outs").

Class Members (in connection with Class Notice), it received only mailing addresses for the vast majority of potential Class Members. *See* Dkt. No. 253, Braun Declaration, ¶¶3, 7, & n.3 (explaining that A.B. Data received 271,911 unique mailing addresses and 1,846 unique email addresses for potential Class Members).[6] This is not uncommon. As A.B. Data explained, "[r]eceiving email addresses for notice mailings is not common practice in securities matters, but emails (if available) were requested by Class Counsel." *Id.* ¶ 7, n.3. Moreover, "[i]n the event that both an email address and mailing address were provided for the same potential Class Member, the Notice was emailed ***and*** the Postcard Notice was mailed." *Id.* (emphasis) The same procedure will be followed for purposes of Settlement Notice. As set forth in the Nordskog Declaration, "A.B. Data will mail (***and*** email to the extent email addresses were previously provided) the proposed [Settlement Postcard Notice] to all potential Class Members included in the Master Mailing List from the Class Notice campaign." Dkt. No. 254-3, Nordskog Declaration, ¶12. In other words, if A.B. Data has only one type of address (mailing or email) for a potential Class Member, it will only send the Settlement Postcard Notice via that type of address. If it has both, it will send the Settlement Postcard Notice to both the mailing and email address for that potential Class Member.

## IV. RESPONSE TO THE COURT'S QUESTIONS REGARDING THE SCHEDULE FOR SETTLEMENT-RELATED EVENTS

On October 22, 2025, the Court sent the Parties a Preliminary Approval Case Management Worksheet, which requests information regarding the Parties' proposed dates for Settlement-related events, including the final Settlement Hearing. As set forth in Appendix A to the Preliminary Approval Motion, the Parties' proposed schedule is pegged to entry of the Preliminary Approval Order. Were the Court to enter that Order by October 28, 2025 (the date of the Preliminary Approval Hearing), that would result in the following proposed schedule:

| **Summary of Key Dates** | **Parties' Proposed Dates** | **Notes on Proposed Timeline** |
|---|---|---|
| Class Data to be provided to settlement administrator A.B. Data [*14-21 days after entry of* | Not applicable | As set forth in the Braun Declaration (Dkt. No. 253), ¶ 3, Class Data was already provided |

---

[6] Specifically, in connection with Class Notice, A.B. Data received 122,901 unique mailing addresses for potential Class members from Wells Fargo's shareholder list. Brauns Declaration, ¶ 3. In addition, as a result of its additional efforts, including sending notice to the Nominees contained in its Record Holder Mailing Database, A.B. Data received an additional 149,010 mailing addresses and 1,846 email addresses for potential Class members. *Id.*, ¶ 7.

| Summary of Key Dates | Parties' Proposed Dates | Notes on Proposed Timeline |
|---|---|---|
| this Order] | | to A.B. Data on July 17, 2025, in connection with sending notice of the pendency of the Action as a class action. |
| Class Notice to be sent by (the "Notice Date") [14 days after receipt of data] | November 26, 2025 | Approximately 20 business days after the entry of the Preliminary Approval Order |
| Deadline for publishing Summary Notice | December 12, 2025 | 10 business days after the Notice Date |
| Class Counsel to file their motion for fees and costs and Class Representative awards ("Fee Motion") [Notice Date plus 55-85 days AND must be 35 days before objection deadline] | January 20, 2026 | 55 days after Notice Date. 35 days before Objection Deadline. 63 days before Settlement Hearing. |
| Motion for Final Approval ("Final Approval Motion") to be filed by [same time as fee motion] | January 20, 2026 | 55 days after Notice Date. 35 days before Objection Deadline. 63 days before Settlement Hearing. |
| Postmark deadline to submit request for exclusion [Notice plus 90-120 days] | February 24, 2026* | *This date is only necessary should the Court require a second opt out period. 90 days after Notice Date. 28 days prior to Settlement Hearing. |
| Postmark deadline to submit objection ("Objection Deadline") [Notice plus 90-120 days] | February 24, 2026 | 90 days after Notice Date. 28 days prior to Settlement Hearing. 35 days after Final Approval Motion and Fee Motion. |
| Deadline for submitting Claim Forms | February 24, 2026 | 90 days after Notice Date |
| Deadline for filing reply papers, including Plaintiffs' Counsel's and A.B. Data's supplemental statements regarding status of notice program, objections, and opt-outs [14 days before hearing] | March 10, 2026 | 14 days before Settlement Hearing |
| Fairness and Final Approval | March 24, 2026 | 118 days after Notice Date. |

| Summary of Key Dates | Parties' Proposed Dates | Notes on Proposed Timeline |
|---|---|---|
| Hearing ("Settlement Hearing") [*Generally, Notice Date plus approximately 118-148 days*] | | |

Plaintiffs will also separately submit these dates to the Court in the worksheet form that the Court provided.

Finally, in the Court's Preliminary Approval Questions, the Court asked the Parties, to the extent any adjustments are needed to the proposed Preliminary Approval Order for signature (including key dates for hearings), to please forward that proposed order prior to the hearing. Plaintiffs have adjusted the Proposed Preliminary Approval Order to reflect the Parties' proposed schedule set forth above, and will separately submit a Word version of that Proposed Order to the Court.

Dated: October 24, 2025

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
SHARAN NIRMUL*[7]
(snirmul@ktmc.com)
GREGORY CASTALDO*
(gcastaldo@ktmc.com)
JOSHUA A. MATERESE*
(jmaterese@ktmc.com)
EVAN R. HOEY*
(ehoey@ktmc.com)
MARIANNE UY*
(muy@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel:    (610) 667-7706
Fax:   (610) 667-7056

-and-

JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
STACEY M. KAPLAN (Bar No. 241989)
(skaplan@ktmc.com)

---

[7]   Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:   (415) 400-3001

*Counsel for Class Representative SEB Investment Management AB and Class Counsel*

**SAXENA WHITE P.A.**
DAVID R. KAPLAN (SBN 230144)
(dkaplan@saxenawhite.com)
EMILY R. BISHOP (SBN 319383)
(ebishop@saxenawhite.com)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075

-and-

LESTER R. HOOKER (SBN 241590)
(lhooker@saxenawhite.com)
DIANNE M. PITRE (SBN 286199)
(dpitre@saxenawhite.com)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel:   (561) 394-3399
Fax:   (561) 394-3382

*Counsel for Class Representative West Palm Beach Firefighters' Pension Fund*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
ROBERT D. KLAUSNER*
(bob@robertdklausner.com)
BONNI S. JENSEN*
(bonni@robertdklausner.com)
7080 Northwest 4th Street
Plantation, FL 33317
Tel:   (954) 916-1202
Fax:   (954) 916-1232

*Board Counsel for Class Representative West Palm Beach Firefighters' Pension Fund*

*appearance *pro hac vice*

DATED: October 24, 2025              **SULLIVAN & CROMWELL LLP**

*/s/ Brendan P. Cullen*
BRENDAN P. CULLEN (Bar No. 194057)
(cullenb@sullcrom.com)

14                    Case No. 3:22-cv-03811-TLT
JOINT RESPONSE TO THE COURT'S QUESTIONS FOR THE PARTIES REGARDING
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

SVERKER K. HOGBERG (Bar No. 244640)
(hogbergs@sullcrom.com)
550 Hamilton Avenue
Palo Alto, CA 94301
Tele:   (650) 461-5600
Fax:    (650) 461-5700

CHRISTOPHER M. VIAPIANO (*pro hac vice*)
(viapianoc@sullcrom.com)
1700 New York Avenue N.W., Suite 700
Washington, D.C.  20006
Tele:   (202) 856-7500
Fax:    (202) 293-6330

LEONID TRAPS (*pro hac vice*)
(trapsl@sullcrom.com)
125 Broad Street
New York, NY 10004
Tele:   (212) 558-4000
Fax:    (212) 558-3588

*Counsel for Defendants Wells Fargo & Company,
Charles W. Scharf, Kleber R. Santos, and Carly Sanchez*

JOINT RESPONSE TO THE COURT'S QUESTIONS FOR THE PARTIES REGARDING
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT