1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & COMPANY, et al., <br><br> Defendants. | Case No. 22-cv-03811-TLT <br><br> **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Re: Dkt. No. 254 |

On September 25, 2025, Lead Plaintiffs SEB Investment Management AB ("SEB") and West Palm Beach Firefighters' Pension Fund ("WPB") (collectively "Plaintiffs") and Defendants Wells Fargo & Company, Charles W. Scharf, Kleber R. Santos, and Carly Sanchez (collectively "Defendants") informed the Court that they had reached an agreement-in-principle to settle the case in its entirety. ECF 249.

Before the Court is Plaintiffs' unopposed motion for preliminary approval of the Settlement Agreement. ECF 254.

Having considered the motion, statement of non-opposition, the relevant law, the terms of the Settlement Agreement and the notice and allocation plan, as well as the record in this case, and based on the reasons and terms set forth herein, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I.    PROCEDURAL HISTORY

On June 28, 2022, Plaintiff Khosrow Ardalan filed a class action complaint against Well Fargo and its executive officers. ECF 1. The Court related and consolidated several actions with the instant action. *See* ECF 53; ECF 99; ECF 107. The Court appointed SEB as Lead Plaintiff and appointed Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel. ECF 55.

United States District Court
Northern District of California

1    On January 31, 2023, Plaintiffs SEB and WPB filed a consolidated class action complaint

2  against Defendants.  ECF 69.  On August 18, 2023, the Court granted Defendants' motion to

3  dismiss and provided Plaintiffs with leave to amend.  ECF 112.  On September 8, 2023, Plaintiffs

4  filed an amended consolidated class action complaint.  ECF 116.  Plaintiffs allege violations of

5  Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the

6  Exchange Act.  *Id.*  On July 19, 2024, the Court denied Defendants' motion to dismiss the

7  amended complaint.  ECF 150.  On August 23, 2024, Defendants filed an answer to the amended

8  complaint.  ECF 155.

9    On January 17, 2025, Plaintiffs filed a motion to certify a class, appoint class

10  representatives, and appoint class counsel.  ECF 182.  Defendants timely filed an opposition, ECF

11  202, and Plaintiffs timely filed a reply, ECF 205.  On April 25, 2025, the Court granted Plaintiffs'

12  motion for class certification.  ECF 215.  The Court certified the following Class of investors:

> All persons and entities who purchased or otherwise acquired Wells
> Fargo & Company common stock between February 24, 2021 and
> June 9, 2022, inclusive, and were damaged thereby. Excluded from
> the Class are Defendants and their families, the officers, directors, and
> affiliates of Defendants, at all relevant times, members of their
> immediate families and their legal representatives, heirs, successors
> or assigns, and any entity in which Defendants have or had a
> controlling interest.

17  ECF 215 at 15.  The Court appointed Lead Plaintiff SEB and additional Plaintiff WPB as class

18  representatives.  *Id.*

19    On May 9, 2025, Defendants petitioned the Ninth Circuit Court of Appeals to file a Rule

20  23(f) appeal of the Court's class certification order.  ECF 217.  On July 17, 2025, the Ninth Circuit

21  denied Defendants' petition.  ECF 232.

22    On July 7, 2025, Plaintiffs filed a motion to strike the expert rebuttal report of Patsy Doerr.

23  ECF 222.  On August 4, 2025, Defendants filed an opposition.  ECF 237.  On August 25, 2025,

24  Plaintiffs filed a reply.  On July 7, 2025, Defendants filed a motion to exclude the expert

25  testimony of Dr. Joseph R. Mason.  ECF 226.  On August 4, 2025, Plaintiffs filed an opposition.

26  ECF 237.  On August 25, 2025, Defendants filed a reply.

27    On July 7, 2025, Defendants filed a motion for summary judgment.  ECF 225.  On August

28  4, 2025, Plaintiffs filed an opposition.  ECF 234.  On August 25, 2025, Plaintiffs filed a reply.

1   ECF 247.  The hearing on Defendants' motion for summary judgment, Defendants' motion to

2   exclude the testimony of Dr. Joseph R. Mason, and Plaintiffs' motion to strike the testimony of

3   Patsy Doerr was set for October 28, 2025.

4          On September 25, 2025, Plaintiffs informed the Court that the parties had reached an

5   agreement-in-principle to settle the case in its entirety.  ECF 249.  On October 15, 2025, Plaintiffs

6   filed an unopposed motion for preliminary approval of settlement.  ECF 255.  On October 17,

7   2025, Defendants filed a statement of non-opposition.  ECF 259.  On October 22, 2025, the Court

8   ordered the parties to file written responses to questions.  ECF 261.  On October 24, 2025, the

9   parties submitted a joint response to the Court's questions.  ECF 262.  The Court heard oral

10  argument on October 28, 2025.  *See* ECF 264.

11         After oral argument, the Court ordered the parties to submit supplemental responses to

12  questions.  ECF 263.  The parties submitted a joint supplemental response on November 3, 2024,

13  ECF 268, along with a modified proposed order, ECF 268-2.

14  **II.    FACTUAL BACKGROUND**

15         **A.    Terms of the Settlement Agreement**

16         Under the terms of the Settlement Agreement, without admitting liability, Defendants will

17  pay $85,000,000 into an interest-bearing escrow account.  ECF 254-1 ¶ 8.  The Settlement

18  Amount includes attorneys' fees and litigation expenses, notice and administration costs, taxes,

19  and any other costs or fees are approved by the Court.  *Id.* ¶ 9.  After subtracting these expenses,

20  the remaining balance comprises the Net Settlement Fund.  *Id.*

21         **B.    Attorneys' Fees, Litigation Costs, Class Representative Awards, Administration**
22              **Costs**

23         Plaintiffs' counsel will request no more than 25% of the Settlement Amount in attorneys'

24  fees (approximately $21.25 million), subject to Court approval.  *Id.* ¶ 16; ECF 254 at 16.

25  Plaintiffs' counsel has billed approximately 35,000 hours to this matter, with a lodestar of

26  approximately $20 million.  ECF 254 at 16.  Accordingly, the parties anticipate that Plaintiffs'

27  counsel's lodestar multiplier will be less than 1.2.  *Id.*  In addition to attorneys' fees, Plaintiffs'

28  counsel also estimate requesting $3.5 million in litigation costs (largely resulting from the hiring

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of expert witnesses and consultants).  ECF 262 at 1–2.  At oral argument, Plaintiffs' counsel

2    clarified that the final request for litigation costs will include costs related to: expert witnesses and

3    consultants, Class Notice costs, web hosting and document review, mediation, filing fees, court

4    reporters, transcripts, messenger services, overnight mail, meals, hotels, travel, legal research,

5    internal reproduction costs, and process servers.  *See* ECF 264; ECF 266.  The parties submitted

6    the following breakdown of estimated litigation costs.  *See* ECF 268 at 2.

| Expense Category | Low-End Total | High-End Total |
| --- | --- | --- |
| Filing Fees | $5,250.00 | $5,500.00 |
| Court Reporters & Transcripts | $101,000.00 | $104,000.00 |
| Messenger Services | $50.00 | $150.00 |
| Overnight Mail | $560.00 | $750.00 |
| External Reproduction Costs | $19,000.00 | $20,000.00 |
| Travel | $102,128.40 | $110,000.00 |
| Online Research | $50,000.00 | $55,000.00 |
| Experts & Consultants | $1,900,000.00 | $2,150,000.00 |
| Confidential Witness Counsel | $114,000.00 | $115,000.00 |
| Internal Reproduction Costs | $3,900.00 | $4,500.00 |
| Mediation | $55,000.00 | $70,000.00 |
| Web Hosting Doc Review & Lit Support | $275,000.00 | $320,000.00 |
| Process Server | $9,000.00 | $9,500.00 |
| Class Notice Administration Fees | $470,480.98 | $470,480.98 |
| Class Rep Reimbursements | $31,000.00 | $40,000.00 |
| TOTAL ESTIMATE | $3,136,369.38 | $3,474,880.98 |

22    Plaintiffs may request class representative awards of up to $40,000 in the aggregate, as

23    reimbursement for the costs and expenses related to their representation of the Class.  *Id.* at 17; *see*

24    ECF 254-1, Ex. A-2; ECF 262 at 2; ECF 268 at 2 n.2.  At oral argument, Plaintiffs' counsel

25    clarified that the awards will be based on class representatives' time and expenses spent in

26    connection with serving as class representatives, including supervising the litigation, gathering and

27    producing document discovery, case-related travel, depositions, and mediation.  *See* ECF 264;

28    ECF 266; ECF 268 at 1.  Despite originally requesting up to $60,000, Plaintiffs updated their

4

United States District Court
Northern District of California

1    estimate of class representative awards to be no more than $40,000.  ECF 268 at n.2.  Plaintiffs

2    will update the maximum reimbursement request in the notices accordingly.  *Id.*  Plaintiffs

3    currently expect that SEB will request reimbursement of approximately $29,000 to $35,000, and

4    WPB will request reimbursement of approximately $2,000 to $5,000.  ECF 268 at 1.  Each

5    Plaintiff will submit a declaration detailing the costs and expenses that they incurred related to

6    their representation of the Class, along with the final fee and expense motion.  *Id.*

7         The proposed Settlement Administrator, A.B. Data, estimates that the total notice and

8    administration costs will range from approximately $950,000 to approximately $1,200,000.  *Id.* at

9    23–24; ECF 254-3, Declaration of Eric A. Nordskog ("Nordskog Decl.") ¶ 31; ECF 262 at 2.  At

10   oral argument, Plaintiffs' counsel clarified that these costs will be related to the administration of

11   the settlement agreement, including costs associated with notice of the settlement, receiving

12   claims, processing and verifying claims, and sending distributions to Authorized Claimants.  *See*

13   ECF 264; ECF 266.  These costs will not include the costs of administrating Class Notice, which

14   are included in the category of litigation costs described above.  *See* ECF 264; ECF 266.

15        Accordingly, the parties' total estimate of attorneys' fees, litigation costs, and

16   administration fees is approximately $25.95 million.  ECF 262 at 2.

17   **C.    Forms of Notice and Notice Plan**

18        A.B. Data, as Settlement Administrator, will distribute Postcard Notice, Long Form

19   Settlement Notice ("Notice"), and Summary Notice to Class Members.  ECF 254 at 21.

20        Class Members will receive the Postcard Notice, ECF 254-1, Ex. A-1, through mail or

21   email.  The Postcard Notice contains information about the Settlement Agreement, claims asserted

22   in this action, the definition of the Class, and the scope of relief.  ECF 254 at 22.  A.B. Data will

23   determine whether to use email, mail, or both based on contact information submitted by Class

24   Members in connection with Class Notice.  ECF 262 at 10–11; *see* ECF 253.  In the event that

25   A.B. Data has both a mailing address and an email address for a Class Member, Postcard Notice

26   will be sent by mail *and* email.  Nordskog Decl., ¶ 12.  The Postcard Notice also refers Class

27   Members to a website where copies of the Notice and Claim Form will be posted.  ECF 254-1, Ex.

28   A-1.  A.B. Data estimates that a total of 775,000 Postcard Notices will be mailed, which includes

United States District Court
Northern District of California

1    275,000 mailing records in A.B. Data's master mailing list, and 500,000 additional Nominees.

2    *See* ECF 254 at 23; ECF 254-3 ¶ 21.

3         The longform Notice will be posted on the Class website.  ECF 254 at 22.  The Notice

4    contains information about the claims asserted in the case, the Settlement Agreement, opportunity

5    for individual who previously submitted a request for exclusion from the Class to opt back in,

6    information about the Fairness and Final Approval Hearing, and information about how Class

7    Members may object to the Settlement Agreement.  ECF 254-1, Ex. A-2.  Regarding objections,

8    the Notice states: "Any Class Member may object to the Settlement, the Plan of Allocation, or

9    Class Counsel's request for attorneys' fees and Litigation Expenses. . . Any objection to the

10   proposed Settlement must be in writing and submitted only to the Court."  *Id.* ¶¶ 59–60.

11        Finally, A.B. Data will publish the Summary Notice in *The Wall Street Journal* and over

12   *PR Newswire*.  ECF 254 at 22.

13        **D.    Class Relief and Plan of Allocation**

14        After attorneys' fees, litigation costs, class representative awards, and administration costs

15   are deducted from the $85 million Settlement Amount, approximately $59.05 million will remain

16   in the Net Settlement Fund (69.5% of the total Settlement Amount).  ECF 254-3 at 6.  If all

17   eligible Class Members participate in the Settlement, the estimated average recovery is $.056 per

18   eligible share of Wells Fargo common stock.  ECF 254-1, Ex. A-2 at 2.  In exchange, Class

19   Members "will be permanently barred and enjoined from bringing any action against all

20   Defendants" with respect to the released claims.  ECF 254-1 ¶ 28.  The Settlement Agreement

21   provides that no amount will revert to Defendants.  ECF 254 at 8–9; ECF 254-1 ¶ 13.

22        Released claims include claims that (1) "arise out of, are based upon, or relate to in any

23   way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations

24   or omissions involved, set forth, alleged or referred to, in the Action, or which could have been

25   alleged in the Action," and (2) "arise out of, are based upon, or relate in any way the purchase or

26   other acquisition of Wells Fargo common stock between February 24, 2021 and June 9, 2022,

27   inclusive."  ECF 254 at 8; ECF 254-1 ¶ 1(b).  This includes the claims pled in the complaint, as

28   well as related claims that "could have been alleged" based on the identical factual predicate.  ECF

1    262 at 3–4.

2         The settlement Class is the same Class certified by the Court on April 25, 2025.  *See* ECF

3    254-1 ¶ 1(i) (citing ECF 215).  Excluded from the Class are Defendants and certain affiliates of

4    Defendants, and any persons and entities who were previously in the Class definition but

5    submitted a request for exclusion in connection with Class Notice, and do not opt back into the

6    Class in connection with the settlement.  *See* ECF 254-1 ¶ 6; *see also* ECF 254-1, Appendix 1.

7         A.B. Data anticipates receiving approximately 193,750 claims, which is based on an

8    anticipated 25% response rate to the notice mailings.  ECF 254-3 ¶ 21.

9         The Plan of Allocation distributes the Net Settlement Fund among Class Members who

10    suffered economic losses related to the difference between the actual purchase price and sale price

11    of Wells Fargo common stock.  ECF 254-1, Ex. A-2, Appendix A at 19.  Plaintiffs' damages

12    expert calculated the estimated amount of alleged artificial inflation in the per-share closing price

13    of Wells Fargo common stock that was proximately caused by Defendants' allegedly materially

14    false or misleading statements or omissions during the Class Period.  *Id.*  Recognized Loss

15    Amounts are based on the difference in the amount of alleged artificial inflation in the price of

16    Wells Fargo common stock at the time of purchase, and at the time of sale.  *Id.*  A Recognized

17    Loss Amount will be calculated for each acquisition or purchase of Wells Fargo common stock

18    during the Class Period that is listed on the Claim Form and for which adequate documentation is

19    provided.  A.B. Data will only distribute Claims over $10.00.  ECF 254 at 19.  If the total of

20    Recognized Claims is greater than the Net Settlement Fund, each Authorized Claimant shall

21    receive his or her *pro rata* share of the Net Settlement Fund.  *Id.* ¶ 77.

22         Because Authorized Claimant recovery amounts will be determined based on transactional

23    information supplied with each claim, the parties cannot estimate recovery per Authorized

24    Claimant at this time.  *See* ECF 268 at 3.  The parties will provide the Court with preliminary loss

25    amounts and estimated Authorized Claimant recoveries in their April 28, 2026 filing.  *Id.*

26         If monies remain in the Net Settlement Fund after the initial distribution, class counsel and

27    the Claims Administrator may determine that it is cost-effective to conduct another distribution to

28    Authorized Claimants who have cashed initial distributions and would receive at least $10.00 from

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    a new distribution.  *Id.* ¶ 80.  If further distribution is not cost effective, the remaining balance will

2    be contributed to the *cy pres* recipient.

3    ### E.    Cy Pres Recipient

4    Any amounts remaining in the Net Settlement Fund that are not cost effective to

5    redistribute to Authorized Claimants will be contributed to the Council of Institutional Investors –

6    Research and Education Fund ("CII-REF").  *See* ECF 254 at 20; ECF 254-1 ¶ 27.  The parties

7    assert in the unopposed motion that the parties do not have a relationship with CII-REF.  ECF 254

8    at 20.  The parties will "strive to distribute as much as the Net Settlement Fund as possible to

9    Class Members," and cannot estimate the *cy pres* amount at this time, although the parties

10    anticipate that a *cy pres* contribution "will be unlikely."  ECF 268 at 4.

11    ## III.    LEGAL STANDARD

12    The Court may approve a proposed class action settlement of a certified class only "after a

13    hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements

14    for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need

15    not address whether the settlement is ideal or the best outcome, but only whether the settlement is

16    fair, free of collusion, and consistent with plaintiffs' fiduciary obligations to the class.  *See Hanlon*

17    *v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  The following factors are relevant to

18    assessing a settlement proposal: (1) the strength of the plaintiffs' case; (2) the risk, expense,

19    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

20    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

21    and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

22    government participant; and (8) the reaction of class members to the proposed settlement.  *In re*

23    *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Churchill Vill.,*

24    *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

25    ## IV.    DISCUSSION

26    ### A.    The Settlement Class Meets Class Certification Requirements

27    The Settlement Agreement defines the Class as:

28

1

2

3

4

> All persons and entities who purchased or otherwise acquired Wells Fargo & Company common stock between February 24, 2021 and June 9, 2022, inclusive, and were damaged thereby. Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

5    ECF 254-1 ¶ 1(i).  This definition is consistent with the definition of the Class certified by

6    this Court.  ECF 215.  *See In re HIV Antitrust Litig.*, No. 19-cv-02573, 2023 WL 11897610, at *1

7    (N.D. Cal. Sept. 25, 2023) (recognizing that the court "previously certified" classes and

8    preliminarily approving settlement without discussion of certification factors); *Shields v. Fed'n*

9    *Internationale de Natation*, No. 18-cv-07393, 2025 WL 2959896, at *7 (N.D. Cal. Oct. 17, 2025)

10    (recognizing that if a damages class has already been certified under Rule 23(b)(3), the Court need

11    only examine "any change in the class certified").

12    Accordingly, the Court grants preliminary approval of the Settlement Class.

13    **B.    The Settlement Agreement Appears Fair and Reasonable**

14    The Settlement Agreement is granted preliminary approval pursuant to Rule 23(e)(2).

15    Based upon the information before the Court, the Settlement Agreement falls within the range of

16    possible approval as fair, adequate, and reasonable, and there is a sufficient basis for notifying the

17    Class and for setting a Fairness and Final Approval Hearing.  *See* ECF 254-1.

18    First, Court recognizes that proceeding to trial would have been costly; recovery was not

19    guaranteed; and there was the possibility of protracted appeals.  The relief provided for the Class

20    appears to be adequate, taking into account: the costs, risks, and delay of trial and appeal; the

21    effectiveness of any proposed method of distributing relief to the Class, including the method of

22    processing Class Member claims; the terms of any proposed award of attorneys' fees, including

23    timing of payment; and any agreements required to be identified under Rule 23(e)(3), including

24    the Settlement Agreement.  ECF 254-1.

25    Second, the parties entered into the Settlement Agreement following a motion to dismiss,

26    filing of an amended complaint, class certification, document production, and extensive

27    negotiation through private mediation.  Counsel for both parties are sophisticated and experienced,

28    and the record does not indicate collusion or self-dealing.  The Settlement Agreement was the

United States District Court
Northern District of California

1    product of arm's-length and informed negotiations with the assistance of an experienced mediator,

2    United States District Court Judge Layn R. Phillips.  ECF 254-1 ¶ R.  "[A] presumption of

3    correctness is said to attach to a class settlement reached in arm's-length negotiations between

4    experienced capable counsel after meaningful discovery."  *Free Range Content, Inc. v. Google,*

5    *LLC*, No. 14-cv-2329, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (cleaned up).

6        Third, the Settlement Agreement appears to treat Class Members equitably relative to each

7    other, given that Claim amounts are calculated based on Class Members' ownership of Wells

8    Fargo common stock during the Class Period.  ECF 254 at 19.

9        Finally, regarding attorneys' fees, litigation costs, class representative awards, and

10    administration coasts, the Court finds that these are reasonable uses of the Settlement Fund.

11        Regarding attorneys' fees, the Court recognizes that under the percentage-of-the-fund

12    method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a

13    reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

14    justifying a departure."  *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz.*

15    *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-

16    06245, 2024 WL 4354988, at *6 (N.D. Cal. Sept. 30, 2024) (same).  Plaintiffs' counsel will not

17    request more than 25% of the Settlement Fund in attorneys' fees, so, accordingly, their motion for

18    attorneys' fees will comply with the Ninth Circuit's benchmark.  *See* ECF 254 at 16; ECF 262 at

19    1–2.  The parties also cross-check this amount using the lodestar method.  *See Bluetooth*, 654 F.3d

20    at 944–45 (encouraging courts to "guard against an unreasonable" attorneys' fees award by using

21    both percentage-of-the-fund method and lodestar calculations).  Here, Plaintiffs' counsel have

22    billed approximately 25,000 to this matter, ECF 245 at 16, and using a lodestar of approximately

23    $20 million, the lodestar multiplier for the requested fee will be less than 1.2.  *Id.  See Shields*,

24    2025 WL 2959896, at *7 ("Where a settlement produces a common fund for the benefit of the

25    entire class, courts have discretion to employ either the lodestar method or the percentage-of-

26    recovery method to determine whether the requested fees are reasonable.") (citing *In re Mercury*

27    *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)).  The Court will evaluate

28

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1        Plaintiffs' counsel's accounting of hours worked upon the filing of the final fee and expense

2    motion, but the upper limit of 25% is reasonable for preliminary approval purposes.

3            Regarding litigation expenses, Plaintiffs' counsel will not request more than $3.5 million

4    in litigation expenses.  *See* ECF 262 at 2 (noting that "a large portion of" litigation costs,

5    "approximately $2 million," "was incurred in connection with the retention of Plaintiffs' experts

6    and consultants").  *Id.*; ECF 254 at 17; *Destefano v. Zynga, Inc.*, 2016 WL 537946, at * 22 (N.D.

7    Cal. Feb. 11, 2016) ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and

8    expenses—including photocopying, printing, postage, court costs, research on online databases,

9    experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys

10   routinely bill private clients for such expenses in non-contingent litigation.").  Counsel will

11   present records documenting these expenses prior to the Court's final approval, thus, accordingly,

12   the anticipated litigation expenses are reasonable at this stage.

13           Turning to class representative awards, the Settlement Agreement provides that Plaintiffs

14   may request class representative awards of up to $40,000 in the aggregate pursuant to the Private

15   Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(4)).  See ECF 268 at 2 n.4 (updating

16   maximum aggregate request to $40,000, down from previous estimate of $60,000).  It is well-

17   established that "under the PSLRA, a class representative may seek an award of reasonable costs

18   and expenses, including lost wages, directly relating to the representation of the class."  *See*

19   Attorney Practice Resources, *Class Action Settlement Guidance* ("N.D. Cal. Guid."), ¶ 7 available

20   at https://cand.uscourts.gov/attorneys/attorney-practice-resources.  As with other awards described

21   above, the Court retains discretion to approve Plaintiffs' request upon receiving the final fee and

22   expense motion.  *Cf. In re Mercury*, 618 F.3d at 995 (holding class members must "have an

23   opportunity to oppose class counsel's fee motion").

24           Finally, regarding administration costs, the parties anticipate it will cost between $950,000

25   and $1.2 million (approximately 1.1–1.4% of the Settlement Amount) to effectuate the Settlement.

26   ECF 254 at 23–24.  The exact administration costs will depend on how many Claims are received

27   and processed, so the parties cannot provide a more precise estimate at this time.  *Id.*  However,

28   the parties have confirmed that these costs will not be duplicative of the costs A.B. Data will

United States District Court
Northern District of California

1    receive in connection with administrating Class Notice.  *See* ECF 266; ECF 268 at 3; ECF 268-1,

2    Supplemental Declaration of Eric Nordskog ("Supp. Nordskog Decl.") (separating accounting for

3    Class Notice costs from anticipated settlement administration costs).  Further, A.B. Data has

4    committed to "leverage the work it completed during the Class Notice Phase to reduce the costs

5    for the Settlement Phase" by not charging duplicative fees.  Supp. Nordskog Decl., ¶ 11.

6    Settlement administration costs will be paid from the Settlement Amount.  *Id.*; ECF 254-1 ¶¶ 9,

7    14.

8            Accordingly, the Court finds that the Settlement Agreement appears fair and reasonable

9    and the Court GRANTS preliminary approval of the Settlement Agreement.

10        **C.    The Supplemental Agreement is Moot**

11           In addition to the Settlement Agreement, the parties entered into a confidential

12   Supplemental Agreement pursuant to which Defendants may terminate the Settlement if requests

13   for exclusion from the Class reach a certain threshold.  ECF 254-1 ¶ 36.  This type of agreement is

14   generally called a "blow provision."  Courts have found that such an agreement does not render

15   the Settlement unfair.  *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL

16   4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the

17   number of class members who opt out of the Settlement does not by itself render the Settlement

18   unfair.").  Because the Court does not require a second opt-out period for the reasons discussed

19   below, the Supplemental Agreement is moot.

20        **D.    The Plan of Notice, Allocation, and Administration is Constitutionally Sound**
         **and Provides Adequate Notice**
21
              **i.    The Court Appoints A.B. Data as Settlement Administrator**
22

23           The parties propose retaining A.B. Data as the settlement and claims administrator.  ECF

24   254 at 20.; ECF 254-1 ¶ 18.  A.B. Data was previously retained in connection with Class Notice.

25   *See* ECF 230; ECF 253; ECF 254-2, Declaration of Sharan Nirmul ("Nirmul Decl.") ¶¶ 3–7.  As a

26   result of prior work following class certification in this matter, A.B. Data already has a mailing list

27   of approximately 277,000 known potential Class Members and their Nominees.  Nordskog Decl.,

28   ¶ 11.  Accordingly, the Court appoints A.B. Data as Settlement Administrator.

1          **ii.    The Court Approves the Notice Plan**

2          A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

3    class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "The class must

4    be notified of a proposed settlement in a manner that does not systematically leave any group

5    without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

6    Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the

7    circumstances, to apprise the Class Members of the proposed settlement and of their right to object

8    or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute

9    due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all

10   applicable requirements of due process and any other applicable requirements under federal law.

11   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice

12   reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

13   the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover*

14   *Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

15         The parties propose the same methods for disseminating notice of the Settlement

16   Agreement as the Court approved for Class Notice.  ECF 254 at 22–23.  A.B. Data shall mail or

17   email a copy of the Postcard Notice to potential Class Members who were previously mailed

18   and/or emailed a copy of the Postcard Class Notice and any other potential Class Member who

19   otherwise may be identified through reasonable effort.  ECF 254 at 22; ECF 254-1 ¶ 19.  A.B.

20   Data also will cause the Summary Notice to be published in *The Wall Street Journal* and

21   transmitted over *PR Newswire*.  ECF 254 at 22.  Any Class Member who receives a Postcard

22   Notice or who learns about the Settlement through other means will be able to obtain the Notice

23   and Claim Form from the Website or may request copies by phone, email, or letter.  The Postcard

24   Notice will include the Website address and a QR code that, when scanned, will bring recipients

25   directly to the Website.  *See* ECF 254-3 ¶ 12; ECF 254 at 22.  In addition, Defendants agree to

26   serve the Notice required under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.*

27   ("CAFA").  ECF 254-1 ¶ 20.  A.B. Data will also post the Notice and Claim Form on the case

28   website, www.WellsFargoSecuritiesAction.com.  *Id.* ¶ 19.  Finally, A.B. Data will update the toll-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    free telephone number, 1-866-905-8128, which will be staffed by customer service representatives

2    trained to answer questions about the Settlement Agreement. *Id.* ¶ 20.

3         The parties' proposed notice plan appears to be constitutionally sound in that it appears to

4    be: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise

5    the Class Members of the proposed settlement and of their right to object as provided in the

6    Settlement Agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all

7    persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any

8    other applicable requirements under federal law.  The proposed notice also includes language from

9    the Northern District's Procedural Guidance for Class Action Settlements regarding filing

10   objections and the consequence of the Court's denial of the settlement.  ECF 254-1, Ex. A-2 ¶ 59.

11   *See Reyes v. Bakery and Confectionary Union and Indus. Int. Pension Fund*, No. 14-cv-05596,

12   2017 WL 7243239, at *7 (N.D. Cal. Jan. 23, 2017) (requiring incorporation of Northern District's

13   Procedural Guidance for Class Action Settlements language into settlement agreement); *see*

14   *generally* N.D. Cal. Guid.

15        Accordingly, the Court approves the longform Notice except as modified herein.  ECF

16   254-1, Ex. A-2.  The Court also approves of the Summary Notice except as modified herein, *id.*

17   Ex. A-3, and Postcard Notice except as modified herein, *id.* Ex. A-1.  The parties agree to update

18   the notice documents with the deadlines ordered herein.  *See* ECF 268 at 5 n.5.  The proposed

19   notices are sufficient to inform Class Members of the terms of the Settlement Agreement, their

20   rights under the Settlement Agreement, their rights to object to or comment on the Settlement

21   Agreement, the process for doing so, and the date and location of the Fairness and Final Approval

22   Hearing.

23             **iii.    The Court Preliminarily Approves the Plan of Allocation**

24        The Court finds that the proposed plan of allocation, which allocates the Net Settlement

25   Fund based on a formula that takes into account when an Authorized Claimant's share was

26   purchased and sold and the amount of alleged artificial inflation per share at the time of purchase

27   and sale, treats Class Members equitably and is fair and reasonable.  *See, e.g., In re Apple Inc. Sec.*

28   *Litig.*, No. 19-cv-02033, 2024 WL 4246282, at *4 (N.D. Cal. Sept. 18, 2024) (finding allocation

1   plan "fair and reasonable" where settlement fund will be distributed based on recognized loss

2   amounts for each securities transaction, calculated based on the "estimated alleged artificial

3   inflation" caused by allegedly false or misleading statements); *Hessefort v. Super Micro*

4   *Computer, Inc.*, No. 18-cv-00838, 2023 WL 7185778, at \*5 (N.D. Cal. May 5, 2023) (same).

5   　　　　Accordingly, the Court preliminarily approves the plan of allocation set forth in the motion

6   for preliminary approval of the settlement and attached notices.  In connection therewith, the Court

7   approves the Proof of Claim form except as modified herein.  ECF 254-1, Ex. A-4.  Counsel are

8   ordered to provide the Court with a sworn declaration no later than **February 27, 2026**, indicating

9   that no member of either firm is on the board of Council of Institutional Investors and that there is

10  no actual conflict or appearance of conflict between the parties and the chosen *cy pres*.

### iv.    The Court Will Not Require a Second Opt-Out Period

12  　　　　The parties argue that a second opt-out period is not necessary, since Class Members

13  already had an opportunity to request exclusion from the Class in connection with Class Notice.

14  ECF 254 at 24–25; ECF 262 at 6–10.  If the Court requires a second opt-out period, the parties

15  request that the Court approve the parties' confidential Supplemental Agreement.  *Id.* at 7 n.7.

16  　　　　Rule 23(e) provides: "If the class action was previously certified under Rule 23(b)(3), the

17  court may refuse to approve a settlement unless it affords a new opportunity to request exclusion

18  to individual class members who had an earlier opportunity to request exclusion but did not do

19  so."  Fed. R. Civ. P. 23(e)(4).  While a second opt-out period is allowed under the Federal Rules, it

20  is not required.  *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is]

21  no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3)

22  class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the

23  mechanism provided in the rule: approval by the district court after notice to the class and a

24  fairness hearing at which dissenters can voice their objections, and the availability of review on

25  appeal. Moreover, to hold that due process requires a second opportunity to opt out after the terms

26  of the settlement have been disclosed to the class would impede the settlement process so favored

27  in the law.").

28  　　　　The Court finds that a second opt-out period is not necessary here.  *See In re HIV Antitrust*

United States District Court
Northern District of California

1  *Litig.*, 2023 WL 11897610, at *2 (finding second opt out period "not necessary" where "class

2  members are sophisticated entities and thus understood the importance of the decision of whether

3  or not to opt out at the time they were notified of class certification").  Pursuant to the Court's

4  order certifying the Class and authorizing Class Notice, potential Class Members had an

5  opportunity to request exclusion from the Class and were made aware of the rights and procedures

6  associated with doing so.  ECF 230; *see* ECF 253-1 ("If you DO NOT want to be a Class member

7  and be legally bound by anything that happens in the Action, you must exclude yourself."); ECF

8  253-2 ("Pursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second

9  opportunity to request exclusion from the Class if there is a settlement.").  As a result, forty-nine

10  potential Class Members requested exclusion during the Class Notice period.  *See* ECF 254-1,

11  Appendix 1.  The Settlement Agreement also provides an opportunity for those potential Class

12  Members who requested exclusion to opt back into the Class in connection with the Settlement.

13  *Id.* ¶ 12.  *See In re Lyft, Inc. Sec. Litig.*, No. 19-cv-02690, 2022 WL 17740302, at *1 (N.D. Cal.

14  Dec. 16, 2022) (preliminarily approving settlement where parties revised agreement to allow for

15  class members who opted out of the class to opt back in).

16       Given that Class Members already had an opportunity to request exclusion from the Class,

17  the Court will not require a second opt out period in connection with the Settlement Agreement.

18  *See In re HIV Antitrust Litig.*, 2023 WL 11897610, at *2; *Shields*, 2025 WL 2959896, at *6

19  (declining to require second opt-out period where Class Notice was provided "less than six months

20  ago and class members were given the opportunity to opt-out of the case").

21       Accordingly, the Court declines to require a second opt-out period, the Supplemental

22  Agreement is moot, and Defendants have no right to terminate the Settlement pursuant to ECF

23  254-1 ¶ 36.

24       **v.   Deadlines to File Objections**

25       Any Class Member who did not previously submit a request for exclusion in connection

26  with Class Notice shall have the right to object to (1) the Settlement Agreement, (2) the plan of

27  allocation; and/or (3) Plaintiffs' counsel's motion for attorneys' fees and class representative

28

16

United States District Court
Northern District of California

1    awards by mailing a written objection to the Court or stating whether they intend to appear at the

2    Fairness and Final Approval Hearing, as set forth in the Class Notice, no later than **April 14, 2026**.

3            **vi.**    **Deadlines to File Motions for Attorneys' Fees, Costs, and Class Representative Awards**

4

5         Plaintiffs and Plaintiffs' counsel shall file their motion for attorneys' fees, litigation costs,

6    and class representative awards no later than **February 27, 2026**.  Each settlement Class Member

shall have the right to object to the motion by filing a written objection with the Court no later
7

than **April 14, 2026**.  Plaintiffs shall file a reply brief responding to any timely objection no later
8

than **April 28, 2026**.
9

10            **vii.**    **Deadlines Related to Fairness and Final Approval Hearing**

11         All briefs, memoranda, and papers in support of final approval of the settlement shall be

filed no later than **February 27, 2026**.  The Court will conduct a Fairness and Final Approval
12

13    Hearing on Tuesday, **May 5, 2026**, at 2:00 p.m., to determine whether the Settlement Agreement

should be granted final approval as fair, reasonable, and adequate as to the Class.  The Court will
14

15    hear all evidence and argument necessary to evaluate the Settlement Agreement and will consider

Plaintiffs' counsel's motion for attorneys' fees and for class representative awards.
16

17         Class members may appear, by counsel or on their own behalf, to be heard in support of or

opposition to the Settlement Agreement and Plaintiffs' counsel's motion for attorneys' fees and
18

19    class representative awards by filing a Notice of Intention to Appear no later than **April 14, 2026**.

     The Court reserves the right to continue the date of the Fairness and Final Approval
20

21    Hearing without further notice to Class Members.  The Court retains jurisdiction to consider all

further applications arising out of or in connection with the Settlement.
22

23            **viii.**    **Post-Distribution Accounting**

24         If final approval is granted, the parties will be required to file a Post-Distribution

25    Accounting in accordance with this District's Procedural Guidance for Class Action Settlements

26    and at a date set by the Court at the time of the Fairness and Final Approval Hearing.  *See* N.D.

27    Cal. Guid. ("Post-Distribution Accounting").  Counsel should prepare accordingly.

28                                          \*     \*     \*

United States District Court
Northern District of California

1    Accordingly, the Court grants preliminary approval of the Settlement Agreement, the

2    forms of notice, and the associated notice and allocation plans.  The Court will further examine the

3    Settlement Agreement at the Fairness and Final Approval Hearing.  Additionally, the Court will

4    review the parties' requests for attorneys' fees, litigation costs, class representative awards, and

5    administration costs at the Fairness and Final Approval Hearing.

6    / / /

7    / / /

8    / / /

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

United States District Court
Northern District of California

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiffs' unopposed motion for preliminary approval of class action settlement, ECF 254.

The proposed order, ECF 268-2, is hereby adopted except as modified herein.  *See also* ECF 241-1, Ex. A.  The Court also **DENIES AS MOOT** ECF 222, ECF 225, and ECF 226. The Court **VACATES** existing deadlines and re-sets deadlines as modified herein.  The summary of key dates is below.

| Summary of Key Dates | |
|---|---|
| **Event** | **Date** |
| Class Data to be provided to Settlement Administrator | July 17, 2025 |
| Class Notice to be sent by | November 26, 2025 |
| Motion for Final Approval to be filed by | February 27, 2026 |
| Class Counsel to file their motion for fees and costs and class representative awards | February 27, 2026 |
| Deadline for Counsel to file sworn declaration indicating any conflicts with *cy pres* recipient | February 27, 2026 |
| Postmark deadline to submit objection | April 14, 2026 |
| Reply briefs regarding objections | April 28, 2026 |
| Class Counsel and Settlement Administrator to submit supplemental statements regarding status of notice | April 28, 2026 |
| Fairness and Final Approval Hearing | May 5, 2026, 2:00 p.m., in-person<br><br>NOTE: Subject to change without further notice to the Class. |

This Order resolves ECF 222, ECF 225, ECF 226, and ECF 254.

IT IS SO ORDERED.

Dated: November 13, 2025

_____
TRINA L. THOMPSON
United States District Judge