UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | **CASE NO.  22-CV-03811-TLT**<br><br>**ORDER GRANTING THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN ALLOCATION, AND GRANTING, AS MODIFIED, MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br>Re: Dkt. Nos. 271, 272 |

**I.    INTRODUCTION**

More than three years after this class action was filed, the parties have reached a Settlement Agreement, and the Court has granted their preliminary approval of the settlement. ECF 249, 269.  No objections have been made.

Having considered the briefing, relevant legal authority, the terms of the Settlement Agreement, and the other matters on file in this action, the Court **GRANTS** Plaintiffs' Motion for final approval of class action settlement and plan allocation and **GRANTS-IN-PART AND MODIFIES-IN-PART** the Motion for attorneys' fees and litigation expenses.

**II.    BACKGROUND**

**A.    Procedural History**

On June 28, 2022, Plaintiff Khosrow Ardalan filed a class action complaint against Defendants Wells Fargo & Company ("Wells Fargo") and its executive officers.  ECF 1.  The Court related and consolidated several actions with the instant matter.  *See* ECF 53; ECF 99; ECF 107.  The Court appointed SEB Investment Management AB ("SEB") as Lead Plaintiff and appointed Kessler Topaz Meltzer & Check, LLP as Lead Counsel.  ECF 55.

On January 31, 2023, Plaintiffs SEB and West Palm Beach Firefighters' Pension Fund

United States District Court
Northern District of California

("WPB") filed a consolidated class action complaint against Defendants.  ECF 69.  On August 18, 2023, the Court granted Defendants' motion to dismiss and provided Plaintiffs with leave to amend.  ECF 112.  On September 8, 2023, Plaintiffs filed an amended consolidated class action complaint.  ECF 116.  Plaintiffs allege violations of Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act.  *Id*.  On July 19, 2024, the Court denied Defendants' motion to dismiss the amended complaint.  ECF 150.  On August 23, 2024, Defendants filed an answer to the amended complaint.  ECF 155.

On January 17, 2025, Plaintiffs filed a motion to certify a class, appoint class representatives, and appoint Class Counsel.  ECF 182.  On April 25, 2025, after the motion was fully briefed, the Court granted Plaintiffs' motion for class certification.  ECF 215.  The Court appointed Plaintiffs SEB and WPB as class representatives.  *Id*.

On May 9, 2025, Defendants petitioned the Ninth Circuit Court of Appeals to file a Rule 23(f) appeal of the Court's class certification order.  ECF 217.  On July 17, 2025, the Ninth Circuit denied Defendants' petition.  ECF 232.

On July 7, 2025, Plaintiffs filed a motion to strike the expert rebuttal report of Patsy Doerr, and Defendants filed a *Daubert* motion to exclude the expert testimony of Dr. Joseph R. Mason and a motion for summary judgment.  ECF 222, 225, 226.  On August 25, 2025, these motions became fully briefed.

Before the hearing of these motions, on September 25, 2025, Plaintiffs informed the Court that the parties had reached an agreement-in-principle to settle the case in its entirety.  ECF 249.  On October 15, 2025, Plaintiffs filed an unopposed motion for preliminary approval of Settlement.  ECF 255.  On October 17, 2025, Defendants filed a statement of non-opposition. ECF 259.  On November 13, 2025, the Court granted the motion for preliminary approval of Settlement.  ECF 269.

Before the Court are Plaintiffs' Motion for final approval of class action settlement and Motion for attorneys' fees and costs.  ECF 271, 272.  On May 5, 2026, the Court heard parties' oral arguments for the Motions.  ECF 281.

### B.    Terms of Settlement

Under the terms of the Settlement Agreement, Defendants will pay $85,000,000 into an interest-bearing escrow account without admitting liability.  ECF 254-1 ¶ 8.  This Settlement Amount includes attorneys' fees, litigation expenses, notice and administration costs, taxes, and other Court-approved fees or costs.  *Id*. ¶ 9.  The Net Settlement Fund is the balance remaining after deducting these expenses.  *Id*.

#### i.    Attorneys' Fees and Costs

Plaintiffs' Counsel seeks 25% of the Settlement Amount in attorneys' fees (i.e., $21.25 million plus interest), which represents a 1.04 multiplier on the lodestar method from billing roughly 36,000 hours to this matter.  ECF 272 at 13–17.  Plaintiffs' Counsel also seeks $3,077,729.33 plus interest in costs for Plaintiffs' Counsel and $36,749.66 for Plaintiffs' representatives (i.e., $31,774.66 to SEB and $4,975.00 to WPB).  *Id*. at 28–30.  Administrative costs, presented by A.B. Data, are estimated to range from approximately $950,000.00 to $1,200,000.00.  ECF 262 at 3; ECF 268-1 at 5; ECF 278 at 6.  In total, Plaintiffs' Counsel's total estimate for attorneys' fees, litigation costs, and administrative costs is $25.95 million.  ECF 262 at 3.

#### ii.    Class Relief and Plan of Allocation

After attorneys' fees ($21,250,000), litigation costs ($3,077,729.33), class representative awards ($36,749.66), and administration costs ($950,000.00 to $1,200,000.00) are deducted from the $85 million Settlement Amount, approximately $59 million will remain in the Net Settlement Fund (69.5% of the total Settlement Amount).  If all eligible Class Members participate in the Settlement, the estimated average recovery is $.056 per eligible share of Wells Fargo common stock. ECF 254-1, Exs. A-1, A-2.

In exchange, Class Members "will be permanently barred and enjoined from bringing any action against all Defendants" with respect to the released claims. ECF 254-1 ¶ 28.  The Settlement Agreement provides that no amount will revert to Defendants.  ECF 254-1 ¶ 13.  Released claims include claims that (1) "arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or

omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action," and (2) "arise out of, are based upon, or relate in any way the purchase or other acquisition of Wells Fargo common stock between February 24, 2021 and June 9, 2022, inclusive." ECF 254-1 at 12. This includes the claims pled in the complaint, as well as related claims that "could have been alleged" based on the identical factual predicate. ECF 262 at 5–6.

The Settlement Class is the same Class certified by the Court on April 25, 2025. *See* ECF 254-1 ¶ 1(i) (citing ECF 215).[1] Those who submitted a request for exclusion in connection with the Class Notice, and do not opt back into the Class in connection with the Settlement, are excluded. *See* ECF 254-1 ¶ 6 and Appendix 1. The Class definition has not been changed since the prior order granting preliminary approval of class action settlement. *See* ECF 269 at 9. Therefore, the Settlement Class meets the prerequisites for certification.

The Plan of Allocation distributes the Net Settlement Fund among Class Members. ECF 273-3 at 27. Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per-share closing price of Wells Fargo common stock that was proximately caused by Defendants' allegedly materially false or misleading statements or omissions during the Class Period. *Id*. Recognized Loss Amounts are based on the difference in the amount of alleged artificial inflation in the price of Wells Fargo common stock at the time of purchase, and at the time of sale. *Id*. Recognized Loss Amounts will be calculated for each acquisition or purchase of Wells Fargo common stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided. A.B. Data will only distribute Claims over $10.00. ECF 254 at 19–20. If the total of Recognized Claims is greater than the Net Settlement Fund, each Authorized Claimant shall receive his or her pro rata share of the Net Settlement Fund. ECF 273-3 at 29.

A.B. Data, as Settlement Administrator, has been processing the 422,014 Claims received

[1] All persons and entities who purchased or otherwise acquired Wells Fargo & Company common stock between February 24, 2021 and June 9, 2022, inclusive, and were damaged thereby. Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

United States District Court
Northern District of California

as of April 24, 2026.  ECF 275-1 at 4.  Out of these claims, A.B. Data claims that 217,787 Claims are provisionally valid and anticipates that estimated Authorized Claimant recoveries will average $1,555.01, subject to fluctuation upon further review.  *Id.* ¶ 12.  For deficient Claims, A.B. Data will notify Claimants of curing deficiencies in their claims.  *Id.* ¶ 13.  Once all Claims have been fully processed, A.B. Data will conduct further audits for quality control and fraud prevention and will provide their administrative report to Class Counsel.  Once the Court has authorized the distribution of the Net Settlement Fund to valid Claimants, A.B. Data will disburse the Net Settlement Fund on a pro rata basis via First-class Mail or wire transfer.  *Id.*  A.B. estimates that approximately 9 months will be required to complete this administrative process.  *Id.*

### iii.    Cy Pres Recipient

Any amounts remaining in the Net Settlement Fund that are not cost effective to redistribute to Authorized Claimants will be contributed to the Council of Institutional Investors–Research and Education Fund.  ECF 273 ¶ 188.  Parties do not have a relationship with Council of Institutional Investors–Research and Education Fund, nor do they have any actual conflict or appearance of conflict.  *Id.* ¶ 189; ECF 273-1 ¶ 11; ECF 273-2 ¶ 11; ECF 273-5 ¶ 2; ECF 273-6 ¶2.  The parties will "strive to distribute as much as the Net Settlement Fund as possible to Class Members," and cannot estimate the cy pres amount at this time, although the parties anticipate that a cy pres contribution "will be unlikely." ECF 268 at 4.

### C.    Class Notice and Claim Administration

A.B. Data, as Settlement Administrator, has distributed 861,448 Postcard Notices that contain Long Form Settlement Notice ("Notice"), and Summary Notice to Class Members via First-Class Mail and email.  ECF 275-1 ¶ 4; ECF 273-3, Exhibits A-C.  A.B. Data published the Summary Notice in *The Wall Street Journal* and *PR Newswire* on December 11, 2025.  *Id.*, Exhibits D-E.  Regarding objections, the Notice states: "Any Class Member may object to the Settlement, the Plan of Allocation, or Class Counsel's request for attorneys' fees and Litigation Expenses. . . Any objection to the proposed Settlement must be in writing and submitted only to the Court." *Id.* at 24.  A.B. Data maintains a toll-free telephone helpline available 24 hours a day, 7 days a week, and a specific case website to accommodate potential Class Members and has

received a total of 2,468 calls and 83,016 website visitors as of April 24, 2026.  ECF 275-1 at 2–3. A.B. Data will continue operating, maintaining, and, as appropriate, updating the case website with relevant case information until the conclusion of its administration.  *Id*. at 3.

A.B. Data has incurred settlement administration costs of approximately $855,000.00, including processing costs of the 422,014 Claims received as of April 24, 2026.  ECF 275-1 ¶ 16. A.B. Data anticipates incurring an additional $300,000 in costs to complete its administration, which will fall within the submitted estimates of approximately $950,000 to $1,200,000. *Id*.; *see* ECF 268-1 ¶ 10.

A.B. Data will not receive any additional revenue, money, or thing of value in connection with the Settlement beyond the fees and expenses that were described in the prior order granting preliminary approval of the class action Settlement.  ECF 269; ECF 268-1; ECF 278-1 ¶ 2; ECF 278-2 ¶ 5.  A.B. Data and its subcontractor will not charge any fees to Class Members or claimants in connection with the Settlement.  ECF 278-1 ¶ 3; ECF 278-2 ¶¶ 6–7.  A.B. Data placed control systems and procedures to protect personal identifying information and other information from Class Members.  ECF 278-1 ¶¶ 4–7; ECF 278-2 ¶ 8.  A.B. Data and its subcontractor have not used nor intend to use artificial intelligence in connection with administering the Settlement.  ECF 278-1 ¶ 8; ECF 278-2 ¶ 9.  A.B. Data set up measures to deter suspicious claimants or others from defrauding the claims process.  ECF 278-1 ¶¶ 9–14; ECF 278-2 ¶ 10.

## III.     MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.     Notice is Appropriate.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Such notice must "clearly and concisely state in plain, easily understood language," the nature of the action, the class definition, and class members' right to exclude themselves from the class, among other things.  Fed. R. Civ. P. 23(c)(2)(B).  Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  While Rule 23 requires reasonable efforts to reach all class members, it does not require that each individual receive notice.  *Silber v.*

United States District Court
Northern District of California

*Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994); *see also Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

Here, the Court previously approved the Notice, Summary Notice, and claim form.  ECF 269.  Since preliminary approval, A.B. Data, as Settlement Administrator, has distributed 861,448 Postcard Notices that contain Notice and Summary Notice to Class Members via First-Class Mail and email.  ECF 275-1 ¶ 4; ECF 273-3 at Exhibits A-C.  A.B. Data published the Summary Notice in *The Wall Street Journal* and *PR Newswire* on December 11, 2025.  *Id*. at Exhibits D-E.

Regarding objections, the Notice states: "Any Class Member may object to the Settlement, the Plan of Allocation, or Class Counsel's request for attorneys' fees and Litigation Expenses. . . Any objection to the proposed Settlement must be in writing and submitted only to the Court."  *Id*. at 24.  A.B. Data maintains a toll-free telephone helpline available 24 hours a day, 7 days a week, and a specific case website to accommodate potential Class Members and has received a total of 2,468 calls and 83,016 website visitors as of April 24, 2026.  ECF 275-1 at 2–3.  A.B. Data will continue operating this service until the conclusion of its administration.  *Id*. at 3. Given the information provided by the Settlement Administrator, the Court finds that the notice is consistent with Rule 23.

### B.     The Settlement is Fair and Reasonable

The Court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

United States District Court
Northern District of California

7

proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id*. at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The review of the settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In consideration of factors outlined in *Hanlon*, the Court finds that the Settlement is fair and reasonable. Plaintiffs contend that they faced several challenges and risks in the present case despite believing they had substantial evidence to support their claims and success at summary judgment. ECF 271 at 17. First, Plaintiffs were challenged to prevail on the elements of falsity and scienter, particularly by proving that Defendants' fake interviews of diverse candidates were indeed "widespread" and Defendants' statements about the implementation of the Diverse Search Requirement were misleading. *Id.* at 18. Next, Plaintiffs contend that proving loss causation and damages requires an "uncertain battle of the experts" at trial. *Id*. at 19–20; *see In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored settlement approval). Plaintiffs were also faced with alleged corrective disclosure following publications about fake interviews that investors were aware of the fake interview allegations and could not cause a decline in Wells Fargo's stock price. Id. at 20. Plaintiffs also claim that unanimous jury verdict on liability would be challenging given the "prominence of Wells Fargo as a longstanding financial institution." *Id*. Over the three-year course of this case, Plaintiffs incurred substantial expenses exceeding $3 million and "proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals." *Id*. at 21; ECF 269 at 9; *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

Plaintiffs engaged in extensive fact and expert discovery and settled just months before the trial. Plaintiffs served and responded to discovery requests, exchanged expert reports, conducted or defended 25 depositions, and analyzed over 620,000 pages of documents. ECF 271 at 22. Plaintiffs briefed two motions to dismiss, class certification, and Defendants' motion for summary judgment, and *Daubert* motions, participated in substantial mediations, and prepared for trial. *Id*. at 14–16, 22; *see Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *6 (N.D. Cal. May 5, 2023) (finding that the parties conducted sufficient discovery given exchange of written discovery, deposition of the plaintiff's market efficiency expert, briefing class certification and multiple motions to dismiss, and "a full-day mediation and subsequent settlement negotiations.")

The Court finds that resumes from Plaintiffs' counsel show extensive experience in litigating securities and other class actions. ECF 273, Exhibits 4-D and 5-D. After the notice was sent to Class Members, no objection to the Settlement has been filed as of April 24, 2026. ECF 275-1 ¶ 10. Although both the SEC and the DOJ investigated the conduct underlying this case and did not bring any charges or claims against Defendants, when the other factors are weighted together with the $85 million settlement, which Plaintiffs' damage expert estimates is "approximately 4.25% to 8.5% of the Class's maximum recoverable damages" and is an amount recommended by the experienced mediator, United States District Court Judge Layn R. Phillips (retired), the Court finds the Settlement proposal is fair and reasonable. *See* ECF 273 ¶ 176; ECF 254-1 ¶ R; *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement representing approximately 5.2% of estimated maximum damages); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *6 (N.D. Cal. Aug. 7, 2023) (approving $25 million settlement that represented "either 3.2% or 4.7% of the maximum possible recovery" and recommended by the mediator).

Accordingly, the Court **GRANTS** Plaintiffs' Motion for final approval of class action settlement.

United States District Court
Northern District of California

United States District Court
Northern District of California

## IV.    MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

### A.    Attorneys' Fees

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id*.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id*. at 964.

Under the percentage-of-the-fund method, the Ninth Circuit "typically calculate[s] 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *accord Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *16 (N.D. Cal. Nov. 6, 2023).  Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'").

Here, Class Counsel requests attorneys' fees award of $21.25 million, claiming that it is 25% of the Settlement Fund.  Class Counsel's hourly rates range from $805 to $1,195 per hour for partners, $370 to $835 per hour for other attorneys, $325 to $660 per hour for in-house investigators and $255 to $405 per hour for paralegals.  ECF 273 ¶ 200; *see In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *7 (N.D. Cal. Sep. 30, 2024) (approving hourly rates ranging from $110 to $1,400).  When cross-checked, this figure amounts to approximately a 1.04 multiplier on the lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)

10

United States District Court
Northern District of California

(finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (approving 1.47 multiplier in securities case); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (approving 2.5 multiplier in securities case); *Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG, 2025 WL 2988737, at *10 (N.D. Cal. Oct. 23, 2025) (approving 1.41 multiplier in securities case). No objector has challenged any of the counsel's hours or rates and Defendants do not oppose the fee request.

Accordingly, the Court finds that an award of attorneys' fees in the amount of $21,250,000 in this action is fair, reasonable, and adequate.

### B.    Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, Class Counsel seeks reimbursement for litigation expenses in an amount not to exceed $3,500,000.00 and provides records totaling $3,077,729.33. The record shows that the largest component of the expenses was the cost of Plaintiffs' experts and consultants, consisting of $1,905,959.23, or approximately 62% of total expenses. ECF 272 at 28; ECF 273 ¶¶ 117-31. The second-largest expense is the notice campaign after Class certification, consisting of $470,498.98, or approximately 15% of total expenses. ECF 262 at 29; ECF 273 114–16. The third-largest expense is the cost of the document database, over 620,000 pages of documents produced by Defendants and third parties, consisting of $267,755.13 or approximately 9% of total expenses. ECF 272 at 29; ECF 273 ¶ 89. The fourth-largest expense is the cost of retaining counsel to represent confidential witnesses. ECF 272 at 29. Other expenses include costs for hearings, depositions, mediations, copying/printing, legal research, and other litigation-related expenses not duplicated in the hourly rates. ECF 272 at 29–30; ECF 273 ¶ 219, n.29. The Court finds the expenses in this action reasonable, fair, and adequate.

11

United States District Court
Northern District of California

### C. Class Representative Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citation omitted). "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

"Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Court "must evaluate named plaintiff's requested award using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (citation omitted). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Plaintiffs SEB and WPB request representative awards of $31,774.66 and $4,975.00, respectively. ECF 272 at 30. Over three years in this instant matter, they have communicated regularly with Plaintiffs' Counsel regarding case developments and strategy, including mediation, reviewed briefs, pleadings, and orders, supervised the discovery production, responded to written discovery, and prepared for and testified at a deposition in connection with class certification. ECF 272 at 31; ECF 273-1 ¶ 8; ECF 273-2 ¶ 8. SEB's employees, including its Head of Legal, Financial Crime Prevention & Regulatory Office (250 hours at approximately $105.19 hourly rate), Legal Counsel (35 hours at approximately $55.47 hourly rate), and various IT personnel (40 hours at approximately $88.39 hourly rate), spent 325 hours on the prosecution of this case. ECF 273-1 ¶ 17. WPB's three members on the Board of Trustees spent 40 hours at a blended $128.33

hourly rate on the prosecution of the action.  ECF 273-2 ¶¶ 16–17.  They reviewed the allegations in the complaints, provided information and documents to Class Counsel, and communicated with Class Counsel about the Settlement. ECF 106; ECF 107.

The Court approves the request for a $4,975.00 award for WPB but modifies the request for SEB to $18,000.00.  Given that "[c]ourts in this district recognize that a $5,000 incentive award is 'presumptively reasonable,'" *Austin v. Foodliner, Inc.*, No. 16-cv-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019); *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, No. 22-cv-03023-TLT, 2025 WL 3546227, at *13 (N.D. Cal. Dec. 4, 2025), the Court finds that WPB's request based on its contribution is fair and reasonable.  However, while the Court recognizes the involvement and complexity of the instant matter and the requested amount is based on a lodestar method, the substance and hours of SEB's contributions are slightly more than the kind of work on behalf of the class of shareholders, warranting an amount beyond the presumptive $5,000.00, but not the requested $31,774.66.  *See Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) (approving a $20,000 service award for each of the named plaintiffs where they each spent approximately 490 and 300 hours to support litigation at their personal and professional risk); *Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-04737-RS, 2025 WL 3034317, at *3–4 (N.D. Cal. Oct. 30, 2025) (approving three lead plaintiffs' awards of $15,765.24, $10,845.00, and $4,845.00 for 81, 57, and 51 hours of work, respectively, where litigation took over five years. *See* ECF 270-2; ECF 270-3; ECF 270-4).  Therefore, the Court finds that the class representative award of $18,000.00 to SEB is fair and reasonable.

## V.    CONCLUSION

Based upon the foregoing, the Motion for final approval of class settlement is **GRANTED**. The Motion for attorneys' fees and litigation expenses is **GRANTS-IN-PART AND MODIFIES-IN-PART** as follows:

1. The Court grants final approval of the settlement agreement.

2. The Court approves Class Counsel is awarded 25% of settlement for a total of $21,250,000.00 in attorneys' fees.

United States District Court
Northern District of California

3. The Court approves litigation costs not to exceed $3,077,729.33.

4. The Court awards the Class Representative Award for SEB Investment Management AB ("SEB") in the amount of $18,000.00.

5. The Court approves the Service Award for West Palm Beach Firefighters' Pension Fund ("WPB") in the amount of $4,975.00.

6. The Court approves administrative costs, presented by A.B. Data, to range from $950,000.00 to $1,200,000.00 and not to exceed $1,200,000.00.

7. After deductions from the common fund for fees and costs, approximately $59,000,000.00 shall remain to be distributed among the participating class members.

8. Class members shall be paid in accordance with the Plan of Allocation described in ECF 273-3 Appendix A.

9. With respect to residuals, the Net Settlement Fund and Lead Counsel shall reallocate such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 in an equitable and economical fashion.

10. These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is de minimis and such remaining balance shall then be donated to the c*y pres*, Council of Institutional Investors–Research and Education Fund.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

The parties shall file a status report no later than August 6, 2026.  The status conference is scheduled for August 13, 2026, at 3:00 p.m. via videoconference.

The parties shall file post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than November 5, 2026.  The Court SETS a compliance deadline on November 12, 2026, 3:00 p.m. via videoconference, to verify timely filing of the post-distribution accounting.

The parties shall file a notice or a motion for initial-class distribution by January 15, 2027. The initial-class distribution hearing is set for March 18, 2027, 3:00 p.m. via

videoconference.

The post-class distribution hearing is set for July 8, 2027, 3:00 p.m. via videoconference. This order resolves ECF 271 and 272.

IT IS HEREBY ORDERED, **ADJUDGED AND DECREED** that final judgment is ENTERED in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on November 13, 2025, ECF 269, and this order.

This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: May 21, 2026

_____

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

15